Susan Q. BRIDGES, Virginia D'Aponte and Kimberly Muryasz, Plaintiffs,

v.

EASTMAN KODAK COMPANY, Yourdon, Inc., Thomas A. Walker, John Kucik, Michael French, Kevin Cash, Mary Heaphy, and David Offenhartz as Supervisors, Agents and Employees of Eastman Kodak Company and Yourdon, Inc. (a Kodak Company), Defendants.

No. 91 Civ. 7985 (RLC).

United States District Court, S.D. New York.

Sept. 1, 1992.

Solotoff & Solotoff, Great Neck, N.Y. (Lawrence Solotoff, Henry S. Kramer, of counsel), for plaintiffs.

Nixon, Hargrave, Devans & Doyle, Garden City, N.Y. (Thomas G. Dignan, Karen Rabinowitz, Mark A. Gerard, of counsel), for defendants Eastman Kodak Co., Yourdon, Inc., Thomas A. Walker and John Kucik.

ROBERT L. CARTER, District Judge.

Plaintiffs Susan Q. Bridges, Virginia D'Aponte and Kimberly Muryasz bring this action against defendants Eastman Kodak Company, Yourdon, Inc., Thomas A. Walker, John Kucik, Michael French, Kevin Cash, Mary Heaphy and David Offenhartz alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (as amended by the Civil Rights Act of 1991), and alleging pendent claims based on the New York Human Rights Law, N.Y.Exec.Law § 296(1)(a) (McKinney 1982). Plaintiffs allege that beginning in 1989, while plaintiffs were employed by Yourdon, defendants Cash and Offenhartz continually sexually harassed them during office hours, resulting in their constructive discharge in early 1990. Plaintiffs allege that the other defendants acquiesced in Cash and Offenhartz's harassing behavior.

Defendants have moved, under Rules 12(b)(1) and 12(b)(6), F.R.Civ.P., (1) to dismiss the complaint to the extent that it states claims based on the Civil Rights Act of 1991, (2) alternatively, if these claims are not dismissed, to dismiss plaintiffs' federal claims for compensatory and punitive damages in excess of either $50,000 or $300,000, (3) to dismiss the New York Human Rights Law claims and (4) to dismiss the federal claims against defendants Walker and Kucik in their individual capacities, and the claim against Walker under New York law.

I.

■ The Civil Rights Act of 1991 ("the Act") was signed into law on November 21, 1991. Among other things, the Act allowed jury trials to be conducted and compensatory and punitive damages to be awarded in intentional discrimination cases brought under Title VII of the Civil Rights Act of 1964 ("Title VII"). *See* Pub.L. No. 102–166, § 102, 105 Stat. 1071 (1991). Previously, jury trials and compensatory and punitive damages had been held to be unavailable in cases brought under Title VII.

*See, e.g., Wade v. Orange County Sheriff's Office*, 844 F.2d 951, 953 (2d Cir.1988). The present case was filed after the date the Act was signed, but concerns conduct allegedly occurring before this date. Plaintiffs have demanded a jury trial and seek compensatory and punitive damages. Defendants seek to strike these portions of the complaint, contending that the Act may not be retroactively applied to conduct occurring before it was signed.

There is a split in authority in this district regarding the retroactivity of the Civil Rights Act of 1991. *Compare Wisdom v. Intrepid Sea–Air Museum*, No. 91 Civ. 4439(RPP), 1992 WL 168224, 1992 U.S.Dist. LEXIS 9424 (S.D.N.Y. June 26, 1992) (Patterson, J.) (holding the Act retroactive); *and Jackson v. Bankers Trust Co.*, No. 88 Civ. 4786(JSM), 1992 WL 111105 (S.D.N.Y. May 4, 1992) (Martin, J.) (same); *and Youssef v. M. Rosenblatt & Son, Inc.*, No. 91 Civ. 5063(LBS), 1992 WL 116633 (May 18, 1992) (Sand, J.) (tentatively applying the Act retroactively until further appellate guidance is forthcoming); *with Stout v. International Business Mach. Corp.*, 798 F.Supp. 998 (S.D.N.Y.1992) (Goettel, J.) (holding the Act prospective only); *and Kelber v. Forest Elec. Corp.*, 799 F.Supp. 326 (S.D.N.Y.1992) (Freeh, J.) (same); *and Sorlucco v. New York City Police Dep't*, 780 F.Supp. 202 (S.D.N.Y.) (Mukasey, J.) (denying post-jury verdict motion to retroactively apply the Act), *rev'd on other grounds*, 971 F.2d. 864 (2d Cir.1992).[1] As yet, the Second Circuit has declined to rule on the Act's retroactivity. *See Song v. Ives Lab., Inc.*, 957 F.2d 1041, 1048 (2d Cir. 1992).

### A.

■ The Supreme Court has stated that "the starting point for interpretation of a statute 'is the language of the statute itself.'" *See Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835, 110 S.Ct. 1570, 1575, 108 L.Ed.2d 842 (1990) (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). Where the statute's language clearly expresses retroactive or nonretroactive congressional intent, that intent will control. *See id.* 494 U.S. at 837–838, 110 S.Ct. at 1577. Defendants contend that the language of the Act indicates that it should not be applied retroactively. Defendants focus on section 402(a) of the Act, which provides that "[e]xcept as otherwise specifically provided, this Act and the amendments made by this Act shall take effect on enactment," contending that this language indicates that Congress only intended the Act to apply to conduct occurring after it was enacted.

However, at least two other interpretations of this language are as likely to be correct as that urged by defendants. Congress might have meant that, as soon as the Act was signed, it was to be retroactively applied in all pending cases. Alternatively, Congress might have simply been setting an effective date for the legislation. Therefore, the language that defendants rely on cannot be said to clearly indicate any particular congressional intent on the issue of retroactivity. *See, e.g., Stout, supra*, 798 F.Supp. at 1002–03 (holding that this language is not dispositive on the issue of retroactivity).

Plaintiffs focus on other parts of the Act in arguing that Congress clearly expressed its intent that the Act should be retroactive. Plaintiffs point to two sections of the Act, sections 109(c) and 402(b), that are explicitly made prospective only, giving rise to the inference that the rest of the Act was intended to be applied retroactively.[2]

---

1. In *Everston v. State of New York Mortgage Agency*, No. 89 Civ. 7474(RJW), 1992 WL 34154 (S.D.N.Y. Feb. 18, 1992) (Ward, J.), the court denied a motion for reconsideration of a § 1981 claim in light of the Act since the parties had not argued the issue and since there is a split of authority regarding the Act's retroactivity.

2. Section 402(b) of the Act provides that it will not be retroactively applied to a particular class of disparate impact cases. This section was probably added to prevent the Act from being applied retroactively to *Wards Cove v. Atonio*, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989). *See, e.g.,* 137 Cong.Rec. § 15954 (daily

Plaintiffs contend that these two sections of the Act would be meaningless if the rest of the Act was not intended to apply retroactively, relying on *Graham v. Bodine Elec. Co.,* 782 F.Supp. 74 (N.D.Ill.1992).[3] While the prospective-only status of sections 109(c) and 402(b) does provide some support for the inference that Congress intended the rest of the Act to apply retroactively, there are other plausible reasons for the addition of these provisions. There is some evidence that Congress added them to ensure that, however the courts interpreted the rest of the Act, these provisions would definitely be interpreted as being prospective only. *See Mozee v. American Commercial Marine Serv. Co.,* 963 F.2d 929, 933 & n. 2 (7th Cir.1992) (explaining legislative history). Therefore, sections 109(c) and 402(b) do not "clearly express" congressional intent that the Act be applied retroactively. *See Stout, supra,* 798 F.Supp. at 1001–02; *Jackson, supra,* 1992 WL 111105, at *3.

Both plaintiffs and defendants further contend that even if the language and structure of the Act do not provide clear support for their positions, the legislative history does provide such support. Plaintiffs rely on a report issued in conjunction with the House version of the Act, H.R.Rep. No. 102–40(I), *reprinted in* 1991 U.S.C.C.A.N. 549, 652, which states that the Act was intended to apply retroactively. While the House version of the Act did specifically state that the Act was to apply retroactively, *see* H.R. 1, § 113, this provision was deleted from the enacted legislation. The Act's legislative history contains numerous statements by proponents and opponents of retroactivity expressing their respective beliefs concerning the Act's retroactive or nonretroactive nature. *Compare, e.g.,* 137 Cong.Rec. S15,483 (daily ed. Oct. 30, 1991) (interpretive memorandum of Senator Danforth opposing retroactivity); *with* 137 Cong.Rec. S15,963 (daily ed. Nov. 5, 1991) (remarks of Senator Kennedy en-

dorsing retroactive application of the Act); *and* 137 Cong.Rec. H9531 (daily ed. Nov. 7, 1991) (remarks of Representative Edwards endorsing retroactivity); *see generally Smith v. Petra Cablevision Corp.,* 793 F.Supp. 417, 421–424 (E.D.N.Y.1992) (extensively chronicling the Act's legislative history). In light of such direct conflicts of opinion it is clear that the congressional debates, reports and memoranda accompanying the Act cannot be relied upon to decide the retroactivity issue.

Defendants urge the court to rely on the veto of the Civil Rights Act of 1990, which contained a provision favoring retroactivity, and the passage of the 1991 Act without such a provision, contending that this demonstrates congressional intent in favor of nonretroactivity. While at least one court has been persuaded by this argument, *see Fray v. Omaha World Herald Co.,* 960 F.2d 1370, 1378 (8th Cir.1992), it would be illogical, in light of the clear conflicts in congressional opinion denoted above, to hold that the absence of a retroactivity provision in the 1991 Act exhibits any general intent of congress disfavoring retroactivity. *See Mozee, supra,* 963 F.2d at 933 (rejecting argument that the difference in the 1990 and 1991 legislation exhibits congressional intent disfavoring retroactivity); *Kelber, supra,* 799 F.Supp. at 337–38 (same); *Smith, supra,* 793 F.Supp. at 422 (same).

Since neither the language nor the legislative history of the Civil Rights Act of 1991 exhibit any clear congressional intent on the issue of retroactivity, the court must reject both parties' arguments that legislative intent supports their respective positions.

## B.

Defendants next urge the court to rely on a Policy Guidance issued by the EEOC, E.E.O.C. Notice No. 915.002 (Dec. 27, 1991),

---

ed. Nov. 5, 1991) (letter from Senator Murkowski to colleagues). Section 109(c) of the Act forecloses retroactivity in cases brought by Americans living abroad against American companies.

**3.** This argument also persuaded the court in *Stender v. Lucky Stores, Inc.,* 780 F.Supp. 1302, 1303–04 (N.D.Cal.1992), to apply the Act retroactively.

expressing the agency's opinion that the Act should not be applied retroactively. However, while cases in this district conflict on the issue of the Act's retroactivity, they are uniform in according little deference to the EEOC Policy Guidance in resolving this issue. *See Stout, supra,* 798 F.Supp. at 1004; *Kelber, supra,* 799 F.Supp. at 337 n. 13; *Wisdom, supra,* 1992 WL 168224 at *5–6, 1992 U.S.Dist. LEXIS 9424 at *7–8; *Jackson, supra,* 1992 WL 111105 at *4. As stated in *Stout:*

> Where an agency is not empowered to promulgate its own regulations, courts may accord less weight to the agency's interpretation of a statute. Indeed, the Supreme Court has invoked this idea in its refusal to defer to the EEOC's construction of Title VII.... The deference to which the EEOC's position is entitled thus rests more generally upon the persuasiveness of its reasoning.

> As other courts have noted, the EEOC's position was based upon its conclusions regarding the language of the statute, the legislative history of the Act, and an examination of judicial decisions, in short the same sort of statutory analysis courts regularly engage in.

798 F.Supp. at 1004 (citations omitted). The court went on to conclude that the EEOC's reasoning was not persuasive. *See id.; see also Smith, supra,* 793 F.Supp. at 425 (giving little deference to EEOC's reasoning). Since cases in this district have consistently held that the EEOC Policy Guidance is not entitled to any special deference, the Guidance will not control the resolution of the retroactivity issue in this case.[4]

### C.

Given the Act's ambiguous language and legislative history and the lack of persua-siveness of the EEOC's policy guidance, the court must turn to legal presumptions regarding the retroactive application of statutes. The Supreme Court's precedents in the area of retroactivity have given rise to two conflicting approaches to the retroactivity issue.

The first approach had its modern genesis in *Thorpe v. Housing Authority of Durham,* 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969), where the Supreme Court held that "[t]he general rule ... is that an appellate court must apply the law in effect at the time it renders its decision." 393 U.S. at 281, 89 S.Ct. at 526. The court relied on *United States v. Schooner Peggy,* 5 U.S. (1 Cranch) 103, 108–09, 2 L.Ed. 49 (1801), in which Chief Justice Marshall held that a newly enacted treaty had to be retroactively applied to a case pending before the Court. In *Thorpe,* the Court held that there was an exception to retroactive application of laws in cases of "manifest injustice." *See* 393 U.S. at 282, 89 S.Ct. at 526. In *Bradley v. School Board of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), the Court expanded on *Thorpe* and *Schooner Peggy,* holding that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." 416 U.S. at 711, 94 S.Ct. at 2016.

However, in *Bowen v. Georgetown University Hospital,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), the Court appeared to diverge from its earlier approach to the retroactivity issue. Without citing *Schooner Peggy, Thorpe,* or *Bradley,* the Court stated that "[r]etroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." 488 U.S. at 208, 109 S.Ct. at 471. Subsequently in *Bonjorno, supra,* 494 U.S. at 837, 110 S.Ct. at 1577, the Court acknowl-

---

**4.** In *Vogel v. City of Cincinnati,* 959 F.2d 594 (6th Cir.1992), the Sixth Circuit, with little discussion, deferred to the EEOC's interpretation of the Act. *See id.* at 598. However, the one case that the court relied on, *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), involved an agency that was empowered to promulgate its own regulations. The *Chevron* Court relied on this fact for its holding. *See* 467 U.S. at 843–45, 104 S.Ct. at 2781–2782.

edged the "apparent tension" between *Bowen* and *Thorpe/Bradley*, but was not forced to resolve it because there the court found clear legislative direction regarding retroactivity. *See* 494 U.S. at 837–40, 110 S.Ct. at 1577–78. The Second Circuit has yet to address this issue, although it generally continues to follow *Bradley*. *See United States v. Colon*, 961 F.2d 41, 45 (2d Cir.1992); *Gonzalez v. Home Ins. Co.*, 909 F.2d 716, 723 (2d Cir.1990); *Taub, Hummel & Schnall, Inc. v. Atlantic Container Line, Ltd.*, 894 F.2d 526, 529 (2d Cir.1990); *Leake v. Long Island Jewish Medical Center*, 869 F.2d 130, 131 (2d Cir.1989), *aff'g* 695 F.Supp. 1414 (E.D.N.Y.1988). *But see Lehman v. Burnley*, 866 F.2d 33, 37 (2d Cir.1989) (following *Bowen* ).

The "apparent tension" between *Bowen* and *Thorpe/Bradley* may be resolved by reference to the Supreme Court's related precedents in this area. In *Bennett v. New Jersey*, 470 U.S. 632, 105 S.Ct. 1555, 84 L.Ed.2d 572 (1985), the Supreme Court held that "statutes affecting substantive rights and liabilities are presumed to have only prospective effect." 470 U.S. at 639, 105 S.Ct. at 1560. *Bennett* is in accord with the traditional approach to retroactivity taken by American courts, which historically applied a presumption of nonretroactivity only to statutes that affected vested rights. *See* Elmer E. Smead, *The Rule Against Retroactive Legislation: A Basic Principle of Jurisprudence*, 20 Minn. L.Rev. 775, 786–87 (1936). A number of courts have followed *Bennett* in resolving the tension between *Bowen* and *Thorpe/Bradley*. *See, e.g., Mozee, supra,* 963 F.2d at 936; *Stout, supra,* 798 F.Supp. at 1004–06; *Wisdom, supra,* 1992 WL 168224 at *3–4, 1992 U.S.Dist. LEXIS 9424 at *14–16.

*Bennett* explains *Bowen's* apparent divergence from *Bradley*. In *Bowen,* the Secretary of Health and Human Services (HHS) attempted to promulgate a retroactive rule that would allow him to recoup $2 million in payments made to health care providers under the Medicare Act. The payments were proper under former HHS rules. Previously, the providers had successfully sued to vindicate their rights to receive payment under the former rules. *See* 488 U.S. at 206–07, 109 S.Ct. at 470–71. The facts of *Bowen,* involving vested, substantive rights, closely resemble those of *Bennett,* which also involved an attempt by a federal agency to promulgate retroactive rules in order to recoup funds already paid out. *See* 470 U.S. at 633–37, 105 S.Ct. at 1556–59. Traditionally, courts applied a presumption of nonretroactivity only to vested property-type rights similar to the ones at issue in *Bennett* and *Bowen. See Smead, supra,* 20 Minn.L.Rev. at 781–87.

*Bennett's* holding militates in favor of retroactive application of the Act to the present case. The jury trial and damages provisions of the Civil Rights Act of 1991 at issue here do not grant plaintiffs additional substantive rights, but rather are more aptly described as augmenting the procedures by which plaintiffs may vindicate their pre-existing substantive rights. *See Croce v. V.I.P. Real Estate, Inc.,* 786 F.Supp. 1141, 1146 (E.D.N.Y.1992) ("The defendant's conduct, if established, was illegal before the enactment of the Act, as well as afterward."). As such, they may be applied retroactively under the *Bennett* analysis.

While it is arguable that the additional damages that the Act provides might be termed "substantive" in that defendants might have modified their conduct if the provisions had been in place when the discriminatory behavior allegedly took place, *see Stout, supra,* 798 F.Supp. at 1004–06, the Seventh Circuit has offered a convincing explanation of why this argument should be rejected:

> [T]he traditional theory underlying at least compensatory damages is that they are meant to compensate parties for their losses. Because society's valuation of a victim's losses understandably changes over time, it does not seem unfair to force litigating parties to comply with the more recent statutory changes with regard to damages.

*Mozee, supra,* 963 F.2d at 939 (citation omitted); *accord Jackson, supra,* 1992 WL 111105 at *6; *Croce, supra,* 786 F.Supp. at

1146, 1148–49. Moreover, defendants had no "vested right[ ]," *Smead, supra,* 20 Minn.L.Rev. at 787, to limit their damages or to a trial by jury before the Act took effect. *See Jackson, supra,* 1992 WL 111105 at *5–6; *Croce, supra,* 786 F.Supp. at 1148–49. Therefore, there seems to be no "manifest injustice," *Bradley, supra,* 416 U.S. at 711, 94 S.Ct. at 2016, in applying the Act to the present case.

Since under the Supreme Court's retroactivity analysis as explained in *Bennett,* the Civil Rights Act of 1991 should be applied retroactively to this case, it will be so applied.

## II.

Defendants alternatively move that, if the Civil Rights Act of 1991 does apply to plaintiffs' claims, the compensatory and punitive damages claims made by each plaintiff under Title VII be limited to either $50,000 or $300,000. Defendants rely on section 102 of the Act, which limits the sum of compensatory and punitive damages awardable to each plaintiff under Title VII to $50,000 for employers having 100 or fewer employees. Defendants contend that plaintiffs were employed only by Yourdon, Inc., rather than by Eastman Kodak. It appears that Yourdon has 100 or fewer employees. In support of this motion, defendants rely on an affidavit submitted by defendant Kucik, who is an officer of either Yourdon or Kodak, alleging that plaintiffs were solely employed by Yourdon.

■ Plaintiffs concede that they were nominally employed by Yourdon, but offer the affidavit of plaintiff D'Aponte, who states her belief that Yourdon and Kodak functioned as one company and that employment decisions regarding plaintiffs were made by Kodak. Under certain circumstances, two entities may be so interrelated that they are treated as a single employer for the purposes of Title VII. *See, e.g., Frishberg v. Esprit de Corp., Inc.,* 778 F.Supp. 793, 800 (S.D.N.Y.1991) (Carter, J.). However, the issue of Yourdon and Kodak's relationship cannot be decided at this time. The parties have submitted only meager factual information on this subject and, at this stage of the proceedings, plaintiffs have had little or no discovery to substantiate their claim that Yourdon and Kodak operated as one employer.

Defendants also argue that even if plaintiffs are employed by Kodak, their claims for compensatory and punitive damages are limited to $300,000—the maximum amount of such damages permitted by section 102 of the Act. Since the Act does limit these damages to $300,000, *See* Pub.L. No. 102–166, § 102, 105 Stat. 1071, defendants are correct, and their motion to limit each of plaintiffs' Title VII compensatory and punitive damages claims to $300,-000 is granted.[5]

## III.

■ Defendants have also moved to dismiss plaintiffs' New York Human Rights Law (HRL) claims, contending that the court should decline to exercise pendent, or supplemental jurisdiction over these claims. A federal court has the power to hear state law claims under the doctrine of pendent, or supplemental jurisdiction if the state claims "are so related to [the federal claims] that they form part of the same case or controversy...." 28 U.S.C. § 1367 (1992); *see also United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).[6] The exercise of pendent jurisdiction is discretionary, however, and a fed-

**5.** Defendants' motion is granted only with respect to plaintiffs' Title VII claims. New York law does not impose any similar limit on the amounts recoverable for plaintiffs' New York Human Rights Law claims. *See* N.Y.Exec.Law § 297(9) (McKinney Supp.1992).

**6.** In 1990, Congress enacted 28 U.S.C. § 1367, granting federal courts "supplemental jurisdiction," a term that includes what had formerly been referred to as "pendent jurisdiction." The statute incorporated the constitutional analysis of *Gibbs,* the leading case in the area of pendent jurisdiction. *See* 13B Charles A. Wright et al., *Federal Practice and Procedure* § 3567.1 (Supp. 1992). This opinion will use the terms supplemental jurisdiction and pendent jurisdiction interchangeably.

eral court may dismiss the state claims if the state issues substantially predominate, or may dismiss for nonjurisdictional reasons, such as likelihood of jury confusion. *See* 28 U.S.C. § 1367(c); *Gibbs,* 383 U.S. at 727, 86 S.Ct. at 1139. Defendants argue that both jury confusion and predomination of state issues are likely to result if the court retains jurisdiction over plaintiffs' state claims.

Defendants' argument that jury confusion will result and that state claims will predominate primarily rests on their assumption that jury trials and compensatory damages are available under the HRL, but are not under Title VII. However, this argument is moot since, as discussed above, the court has determined that plaintiffs are entitled to a jury trial and to compensatory damages on their Title VII claims. Likewise, defendants' argument that retention of the HRL claims would subvert Congress' intent to prohibit jury trials in Title VII cases has also been mooted.

Defendants also contend that even if the Act does apply to plaintiffs' Title VII claims, jury confusion will result. Defendants first point out that under the Act, plaintiffs' damages are limited to $300,000 while the HRL does not similarly limit damages, arguing that the disparity in awardable damages will confuse the jury. However, since the Act provides that "the court shall not inform the jury of the limitations [on damages awardable under Title VII]," Pub.L. No. 102–166, § 102, 105 Stat. 1071, the jury will be unaware of this disparity.

Defendants also point out that under the HRL, unlike Title VII, in order to hold their employer liable for the discrimination of its employees, plaintiffs must prove that the employer "became a party to it by encouraging, condoning, or approving it." *Totem Taxi, Inc. v. New York State Human Rights Appeal Bd.,* 65 N.Y.2d 300, 325, 491 N.Y.S.2d 293, 295, 480 N.E.2d 1075, 1077 (1985); *see also State Div. of Human Rights v. St. Elizabeth's Hosp.,* 66 N.Y.2d 684, 496 N.Y.S.2d 411, 487 N.E.2d 268 (1985). However, defendants make too much of this difference between the state and federal standards. Juries are instructed regularly on different theories of relief, even when only federal claims are present. The mere existence of one difference in legal theory does not create a sufficient likelihood of jury confusion to justify dismissing plaintiffs' HRL claims.

Moreover, "considerations of judicial economy, convenience and fairness to litigants," *Gibbs, supra,* 383 U.S. at 726, 86 S.Ct. at 1139, militate strongly in favor of retaining jurisdiction over the HRL claims. These claims are based on the same allegedly discriminatory conduct as the federal claims. Since federal courts have exclusive jurisdiction over Title VII claims, dismissing the HRL claims would result in duplicative litigation over the same conduct. *See Song v. Ives Laboratories, Inc.,* 735 F.Supp. 550, 554 (S.D.N.Y.1990) (Wood, J.) (refusing to dismiss pendent HRL claims because dismissal would result in duplicative litigation). This is the precise sort of circumstance that pendent jurisdiction was created to avoid. Therefore, defendants' motion to dismiss plaintiffs' Human Rights Law claims will be denied.[7]

## IV.

### A.

Defendants have also moved to dismiss the Title VII claims against defendants Walker and Kucik in their individual capacities. Defendants argue that individuals may not be sued in their individual capacities under Title VII, but may only be sued in their official capacities as surrogates for the employer.

Under Title VII, liability may be imposed on employers who engage in discriminatory conduct. *See* 42 U.S.C. § 2000e–2(a). "Employer" is defined as "a person en-

---

**7.** Defendants, in their reply brief, also move that, even if the court exercises jurisdiction over the HRL claims, plaintiffs' claims for punitive damages under the HRL be dismissed, contending that punitive damages are unavailable under the HRL. However, defendants' argument may not be considered since it was made for the first time in their reply brief. Motions must be made in moving papers to give the opposing party time to respond to them.

gaged in industry affecting commerce ... and *any agent* of such a person." *See id.* § 2000e(b) (emphasis added). The term "agent" has been held to include supervisors and other individuals who participate in the discriminatory decision-making process. *See Tuber v. Continental Grain Co.,* 36 Fair Empl.Prac.Cas. (BNA) 933, 1984 WL 1326 (S.D.N.Y.1984) (Conner, J.). Thus, defendants Walker and Kucik may be sued if they fulfill the above requirements.

Defendants contend that although Walker and Kucik may be sued, they may only be sued in their official capacities. Cases in this Circuit have not discussed this issue in the Title VII context. Rather, they appear to assume that both individual and official liability can be imposed under Title VII. *See, e.g., Zaken v. Boerer,* 964 F.2d 1319, 1322–24 (2d Cir.1992) (discussing admissibility of evidence against defendant in her individual capacity in Title VII case). However, under the Age Discrimination in Employment Act ("ADEA"), it is clear that "corporate officers and directors may be *individually liable."* *Wanamaker v. Columbian Rope Co.,* 740 F.Supp. 127, 135 (N.D.N.Y.1990) (emphasis added). Since "the substantive prohibitions of the ADEA were derived *in haec verba* from Title VII," *id.* at 134 (citations omitted), this construction of the ADEA is instructive in interpreting Title VII.

Defendants, however, urge the court to adopt the holdings of *Weiss v. Coca–Cola Bottling Co.,* 772 F.Supp. 407, 410–11 (N.D.Ill.1991), and *Seib v. Elko Motor Inn, Inc.,* 648 F.Supp. 272 (D.Nev.1986). In *Weiss,* the district court held that individual defendants may not be sued in their individual capacities, relying on the damages provisions of Title VII. The court reasoned that since the damages provisions of Title VII only authorized the type of relief that an employer would be expected to provide—reinstatement, back pay, etc.—defendants may not be sued in their individual capacities since individual defendants would be unable to provide this relief. *See* 772 F.Supp. at 411; *accord Seib, supra,* 648 F.Supp. at 274.[8] Other cases that prohibit individual liability have based their holdings on similar reasoning. *See Bertoncini v. Schrimpf,* 712 F.Supp. 1336, 1340 (N.D.Ill.1989) (collecting cases); *see also Harvey v. Blake,* 913 F.2d 226, 227–28 (5th Cir.1990).[9]

However, the rationale for adopting such a reading of Title VII has been undercut by the Civil Rights Act of 1991, which authorizes the award of compensatory and punitive damages. *See* Pub.L. No. 102–166, § 102, 105 Stat. 1071. Since such damages are of a type that an individual can be expected to pay, there appears little reason to adopt the reading of Title VII urged by defendants. Cases adopting the limited reading of Title VII were decided under the former version of the Act and their reasoning is inapposite here. Therefore the court will follow prior cases in this Circuit, which have assumed that both individual and official liability may be imposed, and plaintiffs may maintain suit against defendants Walker and Kucik in their individual capacities under Title VII.

## B.

■ Finally, defendants have moved to dismiss the New York Human Rights Law claims against defendant Walker. Defendants argue that Walker has no ownership interest in Kodak or Yourdon nor any power over personnel decisions and therefore may not be sued under the HRL.

---

**8.** Jurisdictions considering this issue are split on the question of whether both individual and official liability may be imposed. *See Bertoncini v. Schrimpf,* 712 F.Supp. 1336, 1339–40 (N.D.Ill.1989) (collecting cases).

**9.** In *Bertoncini,* the court cited *Bradley v. Consolidated Edison Co.,* 657 F.Supp. 197 (S.D.N.Y. 1987) (Kram, J.), as one of the cases that has adopted the view of individual liability under

Title VII urged by defendants. However, the court in *Bradley* dismissed the individual claims in that case because the defendants were acting according to company policy. *See* 657 F.Supp. at 197. This fits within the normal rule that individual liability must be premised on individual acts distinct from the organization's policy. *See, e.g., Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) (discussing the rule in the § 1983 context).

In *Patrowich v. Chemical Bank,* 63 N.Y.2d 541, 483 N.Y.S.2d 659, 473 N.E.2d 11 (1984), the New York Court of Appeals held that a corporate employee may not be individually sued under the HRL "if he is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others." 63 N.Y.2d at 542, 483 N.Y.S.2d at 660, 473 N.E.2d at 12; *accord Wanamaker, supra,* 740 F.Supp. at 134. In the present case, defendants contend that Walker was only employed by Kodak, not Yourdon, plaintiffs' nominal employer, and that he had no authority or control over the plaintiffs.

However, as explained above, the relation between Kodak and Yourdon cannot be determined at the present time, and thus the extent of Walker's authority over the plaintiffs is unclear. Even if, as defendants contend, Walker was only employed by Kodak, if it is later determined that Kodak and Yourdon may be treated as a single employer then Walker could possess the requisite authority over the plaintiffs necessary to subject him to liability under *Patrowich.* In addition, the HRL also makes it an unlawful discriminatory practice "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so." N.Y.Exec.Law § 296(6) (McKinney 1982). Thus, Walker might be held liable regardless of whether he is nominally employed by Kodak. *See Wanamaker, supra,* 740 F.Supp. at 135–36. Since the relationship between Kodak and Yourdon remains unclear, defendants' motion to dismiss the Human Rights Law claims against Walker must be denied.

## CONCLUSION

Accordingly, defendants' motion under Rule 12(b)(6), F.R.Civ.P., to dismiss the complaint to the extent that it states claims based on the Civil Rights Act of 1991 is denied. Defendants' motion under Rule 12(b)(6), F.R.Civ.P., to dismiss the Title VII compensatory and punitive damages claims of each plaintiff in excess of $300,000 is granted. Defendants' motion, under Rules 12(b)(1) and 12(b)(6), F.R.Civ.P., to dismiss the pendent New York Human Rights Law claims is denied. Defendants' motion under Rule 12(b)(6), F.R.Civ.P., to dismiss the Title VII claims against defendants Walker and Kucik in their individual capacities, and the claim against Walker under New York law is denied.

IT IS SO ORDERED.