Dolores VERDE & Anthony Verde

v.

CITY OF PHILADELPHIA, David Glancey, Enrico Foglia, Eugene P. Davey, William Jameison, Harry Goldberg.

Civ. A. No. 94–2428.

United States District Court, E.D. Pennsylvania.

Aug. 25, 1994.

David A. Yanoff, Beasley, Casey, Colleran, Erbstein, Thistle and Kline, Philadelphia, PA, for plaintiffs.

John P. Straub, Albert L. D'Attilio, Asst. City Sol., City of Philadelphia Law Dept., Philadelphia, PA, for defendants.

## MEMORANDUM AND ORDER

VanARTSDALEN, Senior District Judge.

### 1. Procedural History

Plaintiff Dolores Verde filed this complaint on April 19, 1994 alleging sexual harassment in violation of her civil rights under federal and state statutory law, as well as causes of action under common law.[1] Plaintiff alleges that while employed by the Board of Revision of Taxes of the City of Philadelphia (the Board) as a real estate clerk she was subjected to a "continual course of unlawful sexual harassment, discrimination, and disparate treatment based on her gender, as well as unlawful actions in retaliation for her complaints regarding such treatment." (Complaint at 5–6.) Plaintiff contends that the unlawful course of conduct was engaged in by various employees, including supervisors and administrative and management personnel of the Board. Plaintiff specifically names individual defendants David Glancey, the chairman of the Board, Enrico Foglia, the Executive Director of the Board, Eugene P. Davey, the Administrator of the Board, William Jameison, a supervisor at the Board, and Harry Goldberg, an evaluator for the

---

1. This action was assigned to me along with *Solomon v. City of Philadelphia,* Civil Action No. 94–2427, and *Montgomery v. City of Philadelphia.* Civil Action No. 94–2429, pursuant to Local Rule 3(c) on the assignment of related cases.

Board (the named defendants). All named defendants are sued both individually and in their official capacities. Plaintiff also brings this action against the City of Philadelphia (the City), a municipal entity, as her employer.

In Count I, plaintiff alleges violations of her civil rights under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–2(a). In Count II, plaintiff alleges violations of her civil rights under 42 U.S.C. § 1983. In Count III, plaintiff alleges violations of the Pennsylvania Human Relations Act (the PHRA), Pa.Stat.Ann. tit. 43, §§ 951–963. In Count IV, plaintiff alleges a cause of action for intentional infliction of emotional distress. Finally, in Count V, plaintiff's husband Anthony Verde alleges a cause of action for loss of consortium.[2] All counts are brought against all defendants.

On June 24, 1994 defendants filed the present motion to dismiss portions of the complaint for failure to state a claim upon which relief can be granted. Defendants seek to dismiss Count I as against all named defendants in their individual capacities, and Counts III, IV, and V as against all named defendants in their official capacities. Defendants further seek to have Counts III, IV and V dismissed against the City.

Plaintiffs filed their response in opposition to defendants' motion to dismiss on August 10, 1994. For the reasons set forth below, defendants' motion to dismiss will be granted in part and denied in part.

## 2. Count I with respect to the named defendants in their individual capacities

In Count I plaintiff proceeds against the City and against all named defendants in their individual capacities, asserting that the named defendants are subject to individual liability under Title VII as "agents" of their employer, the City.[3] Plaintiff "demands judgment against all defendants, jointly and severally, for compensatory damages ... attorneys fees and costs ... as well as equitable damages and relief, and ... punitive damages of the non-municipal defendants individually...." (Compl. at 14–15.) Glancey, Foglia, Davey, Jameison and Goldberg seek to have Count I dismissed in their individual capacities for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). These defendants argue that under Title VII individual defendants can be sued only in their official capacities, not in their individual capacities.

■ The Supreme Court delineated the distinction between suits against defendants in their personal, or individual, capacity, and in their official capacity in *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). When proceeding against a defendant in his individual capacity, a plaintiff seeks to impose liability upon a government official for the action he takes under color of state law, and can recover only against the defendant's personal assets. *Id.* at 165–66, 105 S.Ct. at 3104–05. In contrast, a suit against a defendant in his official capacity alleges that the government entity's "policy or custom" played a part in the violation of federal law with which the individual defendant is charged, and "generally represents only another way of pleading an action against an entity of which an officer is an agent." *Id.* Thus, in a suit against a defen-

---

**2.** Research has uncovered no case holding that a loss of consortium claim can—or cannot—derive from a claim for intentional infliction of emotional distress. Some cases suggest, however, that a tort claim for any actionable injury may support a loss of consortium claim. *See, e.g., Geyer v. Steinbronn*, 351 Pa.Super. 536, 506 A.2d 901 (1986) (upholding a jury verdict for loss of consortium claim derived from spouse's claims for defamation and intentional interference with prospective contractual relations); *Lancie v. Giles*, 132 Pa.Cmwlth. 255, 572 A.2d 827 (1990) (allowing a loss of consortium claim to proceed as a derivative of spouse's intentional infliction of

emotional distress claim, albeit without discussion); *Aveyard v. Pennwalt Corp.*, 1990 WL 391308, at *3, 1990 Phila. Cty. Rptr. LEXIS 29, *9 (dismissing wife's loss of consortium claim because husband's claims dismissed, but noting that "[a] wife's claim for loss of her husband's consortium requires that an actionable wrong was committed against the husband.").

**3.** Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such a person ..." 42 U.S.C. § 2000e(b).

dant in his official capacity the assets of the government entity are accessible. *Id.*

Defendants deny the existence of any individual liability under Title VII, and seek to have Count I dismissed as against the named defendants in their individual capacities. Although the Third Circuit has not addressed the issue, courts in this and other circuits have reached varying conclusions with respect to individual liability under Title VII. *Compare, e.g., Grant v. Lone Star Co.,* 21 F.3d 649 (5th Cir.1994) *and Miller v. Maxwell's Int'l, Inc.,* 991 F.2d 583 (9th Cir.1993) *and Busby v. City of Orlando,* 931 F.2d 764 (11th Cir.1991) *and Harvey v. Blake,* 913 F.2d 226 (5th Cir.1990) *with Doe v. William Shapiro, P.C.,* 852 F.Supp. 1256 (E.D.Pa. 1994) *and Bridges v. Eastman Kodak Co.,* 800 F.Supp. 1172 (S.D.N.Y.1992) *and Bertoncini v. Schrimpf,* 712 F.Supp. 1336 (N.D.Ill. 1989). Plaintiffs argue that the 1991 revisions to Title VII, however, removed all uncertainty about the liability of individuals under Title VII. According to plaintiffs, "the rationale for holding actions brought pursuant to Title VII to be 'inappropriate' against agents of employers in their personal capacities has been utterly eviscerated by the 1991 amendments affording Title VII claimants the full panoply of legal, as opposed to merely equitable, relief." (Filed Doc. No. 6 at 16.) Plaintiff quotes *Bridges* that, because the amendments of 1991 "authorize[ ] the award of compensatory and punitive damages ... [and s]ince such damages are of a type that an individual can be expected to pay, there appears little reason to adopt the reading of Title VII" that bars individual liability. *Id.* at 16–17 (quoting *Bridges,* 800 F.Supp. at 1180).

Plaintiff reasons that, prior to the 1991 amendments to Title VII, courts were loathe to impose liability under Title VII on individuals because the remedies then conferred by Title VII were of a sort that individuals were ill-equipped to provide, *e.g.,* reinstatement and backpay. According to plaintiff, the 1991 amendments remove any concerns the court might have had about "inappropriate" remedies, because the additional remedies allowed by the 1991 amendments—compensatory and punitive damages—can be meted out to individuals "appropriately."

■ This line of reasoning looks to judicial precedent for approbation of a particular conclusion with respect to legislative intent, normally a sound step in statutory interpretation. But in the present instance, where subsequent amendments to legislation may affect the assessment of legislative intent, the focus of the inquiry into individual liability under Title VII should not be on the validity of judicial interpretations of the statute up to that point. Rather, the focus should be on the 1991 amendments themselves, what they reveal about Congress's intentions with respect to individual liability, and how the amendments may reflect a change in those intentions. In this regard, the reasoning of the Ninth Circuit in *Miller v. Maxwell's Int'l, Inc.* is instructive.

The *Miller* court first noted that Title VII—in both its pre- and post–1991 versions—limits liability to employers with fifteen or more employees, *see* 42 U.S.C. § 2000e(b), "in part because Congress did not want to burden small entities with the costs associated with litigating discrimination claims." *Miller,* 991 F.2d at 587. The court further reasoned that if "Congress decided to protect small entities with limited resources from liability [under Title VII], it is inconceivable that Congress intended to allow civil liability to run against individual employees." *Id.*

Of course, some courts disagreed with this conclusion even before the 1991 amendments, and other courts maintain that the 1991 amendments reaffirmed the finding of individual liability under Title VII. *Miller* is additionally useful in assessing the legislative intent behind the provision of compensatory and punitive damages by the 1991 amendments. In its original version, employers with fewer than fifteen employees were exempt from Title VII. Under the amendments, Title VII still allows no liability for small employers, evidence of Congress's continuing solicitude for small—and presumably less economically powerful—employers. *See* 42 U.S.C. § 1981a(b)(3)(A–D). The *Miller* court reasoned that "if Congress had envisioned individual liability under Title VII for

compensatory and punitive damages, it would have included individuals in the litany of limitations and would have discontinued the exemption for small employers." *Miller*, 991 F.2d at 588 n. 2.

Had Congress included individuals in the "litany of limitations," it would have answered a number of questions left unanswered if individual liability is imposed by the court. The amendment limits damages to $50,000 for employers of fifteen to 100 employees; to $100,000 for employers of 101–200; to $200,000 for employers of 201–500; and to $300,000 for employers of · 500 or more. This fact alone underscores the unlikelihood that Congress intended individual liability: would a Congress, so solicitous of the vulnerability of small employers to litigation costs and liability that it exempts them completely from liability, really intend to subject salaried workers to damages of $300,-000, just because that particular "agent" had the misfortune to work for a large employer, and when there is no reason to believe that such workers are in any'sense more wealthy or powerful than small employers? Furthermore, the amendments do not disclose whether all defendants—in this instance the City and the named defendants as purported "agents" of the City, an employer of more than 500 persons—are liable for damages of $300,000 each, or whether all defendants are to contribute to one award to plaintiff of $300,000. If the latter, the amendments do not indicate in what proportion each is to contribute, and whether Title VII contemplates joint and several liability.

■ Had Congress intended individual liability, it would—or at least should—have provided answers for these questions. Instead, the amendments, providing as they do for caps on damages, suggest that Congress intended one award from one source, based on that source's ability to pay. A corporation's ability to pay can be estimated by its size and the number of its employees; an individual's ability to pay cannot be estimated by the size of his employer. I conclude that Congress did not intend to allow suits under Title VII against officials in their individual capacity for either compensatory or punitive damages.

To the extent that the motion to dismiss seeks to dismiss Count I as against defendants Glancey, Foglia, Davey, Jameison and Goldberg in their individual capacities, the motion will be granted.

### 3. Count I with respect to defendant Goldberg in his official capacity

The motion also seeks to have Count I dismissed as against defendant Harry Goldberg in his official capacity. Defendants contend that Goldberg is not an "employer" within the definition of Title VII, and that plaintiff did not allege that Goldberg was an employer or supervisor.

■ Defendants correctly report that under Title VII an "employer means a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person." 42 U.S.C. § 2000e(b). Defendants are also correct in noting that, for purposes of Title VII, an "agent" of the employer is an employee who supervises other employees, particularly the plaintiff.

Defendants contend that because plaintiff failed to allege specifically that Goldberg was a supervisor, she has failed to state a cause of action for which relief can be granted. Defendants point out that plaintiff specifically labelled defendant Jameison as a supervisor. (Defendants fail to note, however, that plaintiff does not label defendants Glancey, Foglia or Davey as "supervisors" either. Rather, just like defendants Jameison and Goldberg, Glancey, Foglia and Davey are graced with their official titles, be it "Chairman" or "Executive Director" or "Administrator" or—in Goldberg's case—"Evaluator." Yet defendants do not suggest dismissing all Title VII claims against Glancey, Foglia, and Davey in their official capacities.)

■ The title of "evaluator" is of course more ambiguous than that of "chairman" or "executive director" in terms of what it implies for the bearer's supervisory role and power. The Third Circuit has concluded that a person is an agent of the employer under section 2000e(b) "if he participated in the decision-making process that forms the basis of the discrimination." *Levendos v. Stern*

*Entertainment,* 909 F.2d 747, 752 (3d Cir. 1990). The Third Circuit cited the "direct ability to influence hiring and firing decisions" as indicative of the predicate authority for a finding of supervisory capacity. *Id.* Clearly, therefore, a finding of employer status is predicated on the actor's power over the plaintiff and the terms and conditions of her employment.

 A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle her to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). On a motion to dismiss for failure to state a claim upon which relief may be granted, all allegations in the pleadings must be accepted as true and the plaintiff must be given the benefit of every favorable inference that can be drawn from those allegations. *Schrob v. Catterson,* 948 F.2d 1402 (3d Cir.1991); *Greenwood v. Singel,* 823 F.Supp. 1207 (E.D.Pa.1993). Although plaintiff does not specifically allege a supervisory role for Goldberg in the complaint, and although only one incident is related that specifically impugns Goldberg, (*see* Complaint ¶ 16(j)), it cannot be said that under no set of facts could Goldberg's role be considered supervisory. Defendant Goldberg's job title of "evaluator" is not sufficiently descriptive to allow a determination of whether or not he exercised power over plaintiff, and plaintiff is entitled to any favorable inference that can be drawn from Goldberg's title and from the conduct alleged in paragraph 16(j) of the complaint.

Therefore, to the extent that the present motion seeks to dismiss Count I as against defendant Goldberg in his official capacity, the motion will be denied.

### 4. Count III as against all defendants

 Defendants also seek the dismissal of Count III as against the City and as against the named defendants in their official capacity, citing the immunity granted the City and its employees by the Political Subdivision Tort Claims Act (the PSTCA), 42 Pa. Cons.Stat.Ann. §§ 8541–8564 (West 1982). Count III alleges violations of the PHRA, which explicitly includes among the "employers" who may be liable under the Act "the Commonwealth or any political subdivision or board, department, commission or school district thereof." 43 Pa.Stat.Ann. § 954(b) (West 1991). Clearly, then, since the PHRA expressly provides for liability, the PSTCA cannot provide either the City or the named defendants with immunity from suit under the PHRA.[4] As plaintiffs aptly reason, the "plain meaning rule" of the Pennsylvania Statutory Construction Act, 1 Pa.Cons.Stat. Ann. §§ 1921–1939 (1994 Supp.), combined with the Pennsylvania Legislature's consistent reaffirmation of the definition of "employer" that includes the City, *see* Filed Doc. No. 6 at 4–9, mandates a finding that the City is not immune from suit under the PHRA.

Moreover, case law supports this conclusion. Research uncovers no case that deals with an assertion of immunity under the PSTCA from suit under the PHRA, so this court must predict how the Pennsylvania Supreme Court would rule if the issue were presented to it. *Hospital Support Serv., Ltd. v. Kemper Group, Inc.,* 889 F.2d 1311, 1313 (3d Cir.1989). In countless instances courts have heard PHRA claims against political subdivisions of the Commonwealth without the question of PSTCA immunity being raised at all. *See, e.g., Commonwealth, Pennsylvania Human Resources Comm. v. Johnstown Redevelopment Authority,* 527 Pa. 71, 588 A.2d 497 (1991); *City of Pittsburgh Dep't of Personnel v. Pennsylvania Human Relations Comm'n,* 157 Pa.Cmwlth. 564, 630 A.2d 919 (1993); *see also Parsons v. City of Philadelphia Office of Drug & Alco-*

---

4. On June 30, 1994, in support of their contention that the PSTCA precludes suit against the City under the PHRA, defendants' counsel caused to be mailed to this court a copy of a recent order issued by another court in this district in the case of *Adamietz v. City of Philadelphia,* No. 93–0672 (E.D.Pa. June 23, 1994). Although that order states that the plaintiff "may not maintain a PHRA claim against the City," I do not concur, for the reasons set forth in this memorandum. The case cited in *Adamietz, Agresta v. Goode,* 797 F.Supp. 399, 409 (E.D.Pa. 1992), had nothing to do with the PHRA. Rather, the causes of action in *Agresta* were brought under 42 U.S.C. §§ 1983, 1985 and 1986 and the Pennsylvania Constitution.

*hol Abuse,* 833 F.Supp. 1108 (E.D.Pa.1993). Additionally, in *Mansfield State College v. Kovich,* 46 Pa.Cmwlth. 399, 407 A.2d 1387 (1979), the Commonwealth Court heard the College's argument that it was immune from suit under the PHRA under the then-current statute granting immunity which "reaffirm[ed] and preserve[d] the immunity of the state from suit except in eight delineated categories." *Id.* at 1388. I concur with the conclusion of the Commonwealth court that "the legislature obviously meant to allow an aggrieved public employee to bring an action against his or her employer, the Commonwealth, for it included the Commonwealth under the term 'employer'." *Id.* I further conclude that this finding is equally applicable to the City as a defendant in a suit brought under the PHRA.

Therefore, to the extent that the present motion seeks the dismissal of Count III, the motion will be denied.

Defendants' argument with respect to defendant Goldberg in the PHRA context is as unavailing as it is in the Title VII context. There is nothing of record to suggest that under no set of facts could Goldberg's role be considered supervisory. Therefore, to the extent that the present motion seeks the dismissal of Count III as against defendant Goldberg for lack of "employer" status, the motion will be denied.

**5. Counts IV & V as against the City and as against the named defendants in their official capacity**

Defendants further seek to dismiss Counts IV and V as against the named defendants in their official capacities, and as against the City. In support of this argument defendants cite the PSTCA. Under section 8541 of the PSTCA, "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person," subject to certain exceptions provided in sections 8542 and 8550. 42 Pa.Cons.Stat.Ann. § 8541 (West 1982). Similarly, an employee of a local agency "is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the

scope of his office or duties only to the same extent as his employing local agency and subject to the limitations imposed by this subchapter." 42 Pa.Cons.Stat.Ann. § 8545 (West 1982). In other words, the employee of a local agency enjoys the same immunity as the agency. Accordingly, defendants in this action—a municipality and its employees—are immune from state tort claims unless those claims fall into one of the categories enumerated in sections 8542 or 8550.

Section 8542 permits imposition of liability on a local agency when the injurious acts involve negligent use, care or custody of motor vehicles, personal property, real property, trees, traffic controls, and street lighting, utility service facilities, streets, sidewalks, or animals. 42 Pa.Cons.Stat.Ann. § 8542 (West 1982). Clearly, none of these categories are germane to the present action, and section 8542 therefore does not lift the immunity granted defendants by section 8541.

Section 8550 permits the imposition of liability on employees for acts that constitute "a crime, actual fraud, actual malice or willful misconduct." 42 Pa.Cons.Stat. Ann. § 8550 (West 1982). Section 8550 therefore strips the employees of a local agency of immunity from suit for willful misconduct. In order to prove willful misconduct, it must be shown that the actor desired to bring about the result that followed, or at least that the result was substantially certain to follow. *Renk v. City of Pittsburgh,* 641 A.2d 289, 293 (Pa.1994) (citing with approval the conclusion of the Commonwealth Court in *King v. Breach,* 540 A.2d 976 (Pa.Cmwlth. 1988) that "the term 'willful misconduct' is synonymous with the term 'intentional tort'."); *Diaz v. Houck,* 159 Pa.Cmwlth. 274, 632 A.2d 1081, 1085 (1993). Clearly, the intentional tort alleged in Count IV and its derivative in Count V fall within the ambit of section 8550, and the employees are entitled to no individual immunity for those counts.

However, as defendants point out and as the Supreme Court has confirmed, by making the assets of the governmental entity accessible, suits against an official in his official capacity "generally represent only another way of pleading an action against an entity

of which an officer is an agent." *Graham,* 473 U.S. at 165–66, 105 S.Ct. at 3105; *see also* Defs.' Mot. at 3. Therefore, to the extent that the present motion seeks the dismissal of Counts IV and V as against the named defendants in their official capacities, the motion will be granted.

 As for the liability of the City, section 8550 does not create an "exception to the exceptions" of section 8542, which constitute the sole categories of liability for a local agency; as a result section 8550 does not permit the imposition of liability on a local agency for the willful misconduct of its employees. *Petula v. Mellody,* 158 Pa.Cmwlth. 212, 631 A.2d 762, 765 (1993). The local agency remains liable only for the negligent acts specifically listed in section 8542. *Id.* Therefore, to the extent that the present motion seeks dismissal of Counts IV and V as against the City, the motion will be granted.

### 6. Remaining Counts

 In light of the above, this action shall proceed as follows: Count I, based on Title VII, against the City and against the named defendants in their official capacity only; Count II, based on section 1983, against the City and against the named defendants in their official and individual capacities; Count III, based on the PHRA, against the City and against the named defendants in their official and individual capacities; Count IV, intentional infliction of emotional distress, against the named defendants only in their individual capacities; and Count V, for loss of consortium, against the named defendants only in their individual capacities.[5]

---

**5.** The loss of consortium count is deemed to be derivative only of the claim for intentional infliction of emotional distress. None of the statutes on which the other counts are based—Title VII, the PHRA, and section 1983—allow other than a personal right of action. *See, e.g., Niehus v. Liberio,* 973 F.2d 526, 532–34 (7th Cir.1992) (Posner, J.) (in a section 1983 action, discussing the nature of a loss of consortium claim, and holding that a spouse cannot recover damages under the Constitution for loss of consortium); *Goldberg v. City of Philadelphia,* 1994 WL 313030, at *13, 1994 U.S. Dist. LEXIS 8969, at *48 (E.D.Pa. June 29, 1994) (Kelly, J.) ("Title VII does not provide for loss of consortium damages").