**Gail DOMM, Plaintiff,**

v.

**JERSEY PRINTING CO., INC., Arthur Shlossman, and Fred Golden, Defendants.**

**Civ. No. 93–2467(AMW).**

United States District Court, D. New Jersey.

Nov. 16, 1994.

Catherine Mary Gallagher, Hook, Torack & Smith, Franklin Lakes, NJ, for plaintiff.

John A. Craner, Craner, Nelson, Satkin & Scheer, P.A., Scotch Plains, NJ, and Jed L. Marcus, Grotta, Glassman & Hoffman, P.A., Roseland, NJ, for defendants.

## OPINION

PISANO, United States Magistrate Judge:

### INTRODUCTION

This matter comes before the Court upon the summary judgment motion of defendants Arthur Shlossman ("Shlossman") and Fred

Golden ("Golden").[1] Defendants Shlossman and Golden seek to be dismissed from this sexual harassment case arguing that there is no legal basis for holding them personally liable to plaintiff Gail Domm ("Domm"). In the alternative, defendants argue that plaintiff has failed to establish the existence of a hostile work environment as a matter of law. Defendants also move to dismiss plaintiff's claim for punitive damages. Opposition was filed by plaintiff Domm, and oral argument was heard on October 25, 1994. For the reasons stated herein, defendants' motions for summary judgment are denied.

## BACKGROUND

Domm commenced this lawsuit on April 15, 1993. She is suing under Title VII of the Civil Rights Act of 1964 ("Title VII") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -42 ("NJLAD") for "lost income, lost fringe benefits, emotional distress and physical illness and discomfort caused or aggravated by the emotional distress, punitive damages, costs of suit, attorneys fees and such further relief as the Court deems equitable." Am. Comp. ¶ 16. Her claim arises out of five alleged incidents of sexual harassment which she asserts created a hostile environment.

Domm began working at Jersey Printing Company, Inc. ("Jersey Printing") in 1986 as a sales representative. She continued to be employed by Jersey Printing until November, 1992 when she resigned from her position allegedly due to the hostile environment that was created by the sexual harassment of defendant Shlossman.

Defendant Shlossman became CEO of Jersey Printing in 1989 when his father, who owned the company, began to have financial troubles. Prior to working at Jersey Printing, Shlossman owned and operated his own pre-press printing business. Shlossman and Domm became romantically involved during the summer of 1988, prior to Shlossman's employment at Jersey Printing. Their relationship continued until February, 1990. During that time period, Domm and Shlossman engaged in a consensual sexual relationship, at one point contemplating marriage,

but they decided against it and separated for a six month period as a result. All alleged incidents of sexual harassment occurred over one year after Domm and Shlossman terminated their relationship.

The first incident of sexual harassment alleged by Domm occurred in August, 1991. She asserts that while discussing business in Shlossman's office, Shlossman asked her if she was wearing a bra and if he could see it. Second, Domm claims that in August or September of 1991, she was in Shlossman's office discussing business when Shlossman asked her if she was wearing underpants and if so, what type. Third, in January of 1992, Domm maintains that Shlossman entered her office with two rolled calendars extending from his groin area, simulating a penis. Domm alleges that he shouted, "Look, look," approached her and touched her with the calendars. Next, Domm asserts that in January of 1992 when she phoned Shlossman to cancel a lunch appointment due to illness, Shlossman asked her if she had sprained her thighs as a result of spreading her legs too wide, since he knew that women sometimes did that. Finally, Domm claims that in June of 1992, Shlossman leered at her in a lustful manner. This incident took place in the presence of a co-worker, who observed Shlossman's behavior and offered Domm assistance in walking back to her office.

After each of the first four incidents, Domm maintains that she informed Shlossman that his conduct was inappropriate, unappreciated and unwelcome. Furthermore, Domm reported the first four incidents to her supervisor, Golden. The deposition testimony as to Golden's response to Domm's report differ. Golden stated that he notified Shlossman of the complaints. Shlossman maintains that he was not notified. Domm claims that Golden assured her that he would and did speak with Shlossman. In addition, Domm asserts that Golden instructed her that it was her behavior that caused the problem and that she should terminate all non-business contact with Shlossman.

In September, 1992, Domm presented a letter of resignation to Shlossman recounting

1. The parties have consented to the jurisdiction of this Court for all purposes. 28 U.S.C. 636(c).

the first four incidents of alleged sexual harassment. Domm's resignation did not take effect immediately, and several days later Shlossman proposed an arrangement by which Domm could continue to work for Jersey Printing. The arrangement allowed Domm to work at home on the condition that she waived her right to sue for sexual harassment and agreed to a non-competition clause. Domm declined the proposed offer. She terminated her employment with Jersey Printing in November, 1992 and brought this sexual harassment lawsuit.

## ARGUMENT

### Standard of Review

Pursuant to Fed.R.Civ.P. 56(c), summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* In making this determination, a court must draw all inferences in favor of the non-movant. *Meyer v. Riegel Prods. Corp.,* 720 F.2d 303, 307 fn. 2 (3d Cir.1983), *cert. denied,* 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). Whether a fact is "material" is determined by the substantive law defining the claims. *United States v. 225 Cartons,* 871 F.2d 409, 419 (3d Cir.1989).

When deciding a motion for summary judgment, the judge's function is not to weigh the evidence to determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). An issue is "genuine" if a reasonable jury could hold in the non-movant's favor with regard to that issue. *Id.* at 248, 106 S.Ct. at 2510. A fact is "material" if it influences the outcome of the action under the governing substantive law. *Id.* Summary judgment must be granted if no reasonable trier of fact could find for the non-moving party. *Id.* at 249, 106 S.Ct. at 2510–11; *Radich v. Goode,* 886 F.2d 1391, 1395 (3d Cir.1989).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). If the moving party has carried its burden of establishing the absence of any genuine issue of material fact, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). When the non-moving party's evidence in opposition to a properly supported motion for summary judgment is merely "colorable" or "not significantly probative," the court may grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511. The non-moving party must come forward with more than a mere scintilla of evidence in its favor. *Carlson v. Arnot–Ogden Memorial Hosp.,* 918 F.2d 411, 413 (3d Cir.1990).

When a non-moving party who bears the burden of proof at trial has failed, in opposition to a motion for summary judgment, to raise a disputed factual issue as to any essential element of his or her claim, summary judgment should be granted because "a complete failure of proof concerning an essential element of the [non-moving] party's case renders all other facts immaterial." *Celotex,* 477 U.S. at 322–233, 106 S.Ct. at 2552.

### Sexual Harassment under Title VII

■ Pursuant to Title VII of the Civil Rights Act of 1964, it is "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). A claim of sexual harassment is a form of sex discrimination actionable under Title VII. *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 63–67, 106 S.Ct. 2399, 2404–5, 91 L.Ed.2d 49 (1986).

The legislative history regarding sex discrimination is scarce since the inclusion of

sex-based discrimination in the statute was a last minute decision of Congress. Representatives initially thought that sex discrimination was sufficiently distinct to warrant separate legislative treatment. 110 Cong.Rec. 2577–2584 (1964). As a result, Title VII as it applies to sexual harassment has been defined primarily through regulations and case law.

Sexual harassment is defined as "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature." 29 CFR § 1604.11(a)(1985). The United States Supreme Court recognized two forms of sexual harassment that are actionable under Title VII in *Meritor*, at 63–67, 106 S.Ct. at 2404–05. First, quid pro quo sexual harassment exists when employment benefits are conditioned on sexual favors. Second, Title VII recognizes sex discrimination that creates a hostile or abusive work environment. *Id.*

### "Employer" Status Under Title VII

Title VII defines an employer as:

A person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, **and any agent of such a person,....**" 42 U.S.C. § 2000e(b) (emphasis added).

At issue in the case *sub judice*, is whether defendants Shlossman and Golden can be held individually liable for the sexual harassment which Domm alleges created a hostile environment. Defendant Shlossman is the alleged harasser as well as CEO of the company, and Golden is Domm's supervisor and in charge of personnel matters.[2]

*Meritor* and *Lehmann v. Toys 'R' Us, Inc.*, 132 N.J. 587, 626 A.2d 445 are the seminal federal and New Jersey state cases on sexual harassment, respectively. While the issue of individual liability was not raised in either case, it should be noted that both plaintiffs did name their supervisors as defendants and were not challenged on that ground. The United States Supreme Court held, *inter alia*, that hostile environment sexual harassment is a form of sex discrimination actionable under Title VII and that employers may be held liable for the sexual harassment of their employees even when they do not have notice of their employees actions. *Meritor*, 477 U.S. at 65–73, 106 S.Ct. at 2405–8. The court relied on agency law to reach that determination. *Meritor* at 71–73, 106 S.Ct. at 2408.

In *Lehmann*, the Supreme Court of New Jersey held that a three-pronged test should be employed to determine when an employer may be held liable for compensatory and punitive damages for hostile work environment discrimination of a supervisor. "First, strict liability should apply for relief that is equitable in nature. Second, agency principles, which include negligence, should be applied to decide if an employer is liable for compensatory damages that exceed that equitable relief. Third, a higher level of culpability than mere negligence should be required for punitive damages." *Lehmann*, 132 N.J. at 626, 626 A.2d 445.

Defendants cite a recent decision in this District which declined to impose personal liability upon an employer's agent. In *Crawford v. West Jersey Health Systems*, 847 F.Supp. 1232 (D.N.J.1994), the court relied upon Fifth and Ninth Circuit decisions to hold that under Title VII individuals cannot be held personally liable. *Miller v. Maxwell's Intern. Inc.*, 991 F.2d 583, 587–88 (9th Cir.1993) ("No employer will allow supervisory or other personnel to violate Title VII when the employer is liable for the Title VII violation.... There is no reason to stretch the liability of individual employees beyond the respondeat superior principle intended by Congress."). The Fifth Circuit, in *Harvey v. Blake*, 913 F.2d 226 (5th Cir.1990) held that supervisors may be held liable in their official capacity as agents; while, a mere coworker may never be held liable under Title

---

2. The personal liability of Shlossman and Golden is in issue because Jersey Printing has filed a petition under Chapter 11 of the U.S. Bankruptcy Code. *This action is subject to the automatic stay of claims pending against Jersey Printing.* 11 U.S.C. § 362. As a result, Domm would be required to file a proof of claim in the bankruptcy court and litigate this matter before that court in order to obtain relief against Jersey Printing.

VII as an agent. *Id.* at 227–28. *See also, Grant v. Lone Star Co.,* 21 F.3d 649, 652–53 (5th Cir.1994).

In support of their position, defendants make the following arguments to justify a finding that agents cannot be held individually liable under Title VII. First, they argue that the agency provision in the statute was solely intended to incorporate respondeat superior liability. Second, it is illogical to believe that Congress intended to hold individual employees liable when it explicitly exempted from coverage under the Act all employers with fewer than 15 employees. Finally, personal liability would not increase the likelihood of deterrence. *Crawford* at 1237.

This Court finds that these arguments are undercut by the Civil Rights Act of 1991 which amended Title VII to make available compensatory and punitive damages to plaintiffs in addition to the equitable remedies of reinstatement and backpay. Prior to the amendment, the relief available under Title VII could not be provided by the "agent" who may have been personally responsible for the discrimination or harassment. *Bridges v. Eastman Kodak Co.,* 800 F.Supp. 1172, 1180 (S.D.N.Y.1992).

Furthermore, there is precedent in this District and others which supports the proposition that employees in a supervisory capacity are "agents" of their employer, and therefore, subject to liability under Title VII. A recent decision by Judge Irenas held that supervisors who are agents of their employer can be held personally liable under Title VII. The court stated that distinguishing between the agent's "individual" and "official" capacity for purposes of liability is "without a basis in the law." *Bishop v. Okidata,* 864 F.Supp. 416, 423 (D.N.J.1994), *citing Doe v. William Shapiro, Esq., P.C.,* 852 F.Supp. 1246, 1252 (E.D.Pa.1994) (Individual with supervisory authority may be sued under the Americans with Disabilities Act. The court based its decision on case law interpreting Title VII.). *See also, Gierlinger v. New York State Police,* 15 F.3d 32, 34 (2nd Cir.1994) (Section 1983 liability can be imposed upon individual employers, or responsible supervisors, for failing to properly investigate and address allegations of sexual harassment when through this failure, the conduct becomes an accepted custom or practice of the employer.); *Guyette v. Stauffer Chemical Co.,* 518 F.Supp. 521, 525–26 (D.N.J.1981) (In a Title VII action for sexual harassment, supervisory employees can be held liable as "employers", but co-workers cannot.); *Bridges* at 1179–80. (Both individual and official liability may be imposed upon employees who are agents of the employer, since they are supervisors or participated in the discrimination.); *Magnuson v. Peak Technical Services, Inc.* 808 F.Supp. 500, 512 (E.D.Va.1992) (The term "employer" under Title VII should be construed to encompass persons who control some aspect of an individual's compensation, terms, conditions, or privileges of employment.); *Showalter v. Allison Reed Group, Inc.,* 767 F.Supp. 1205, 1210–11 (D.R.I.1991) (An employee is the employer's agent and subject to liability under Title VII, when they perform the functions of a general manager and have the authority to hire and fire workers. A secretary of an employer's agent is not an "employer" subject to Title VII liability, even if employees hold the erroneous belief that the secretary has the authority to make personnel decisions.); *Wanamaker v. Columbian Rope Co.,* 740 F.Supp. 127, 135 (N.D.N.Y.1990) (Officers and directors of a corporation may be liable for violations of the ADEA if they exercise control over an employee.); *Burrell v. Truman Medical Center, Inc.,* 721 F.Supp. 230, 232 (W.D.Mo.1989) (To be an agent for the purposes of Title VII liability, an individual must be a supervisor or managerial employee who has the responsibility for making some employment decisions.) *Baliko v. Stecker,* 275 N.J.Super. 182, 190, 645 A.2d 1218 (1994) (Liability may be found against an employer, fellow employees, a labor organization or its aiders and abettors for sexual harassment that causes a hostile working environment.).

A recent Third Circuit decision, *Bouton v. BMW of North America,* 29 F.3d 103 (3d Cir.1994), held that agency principles determine employer liability in hostile environment sexual harassment claims. In *Bouton,* the court relied on agency principles to determine that the company could be held liable for the supervisor's harassment, unless

there is an effective grievance procedure in place and the victim is aware of it. While the court did not address the issue that faces this Court, in dictum, the court implied that the harasser could be sued directly under Title VII.[3]

In addition, the Supreme Court of New Jersey, in *Lehmann,* similarly implied that the harasser could be held individually liable under Title VII. In discussing the different standards for equitable, compensatory and punitive damages, the court stated, "unlike the situation with equitable damages, the employer is not necessarily the only one capable of providing compensatory relief and is not necessarily the party whose conduct is sufficiently outrageous to warrant punitive damages." With this statement, the court clearly implied that a plaintiff may be compensated for injuries by a party other than the employer.

■■■ This Court finds as a matter of law that the definition of "employer" and of "agent," like the rest of Title VII, is to be liberally construed in light of its remedial purpose. *Guyette* at 526. Agency principles control employer liability in hostile environment sexual harassment cases. *Meritor,* 477 U.S. at 71–73, 106 S.Ct. at 2408; *Lehmann,* 132 N.J. at 618, 626 A.2d 445; *Bouton* at 108–09. Chapter 11 of the Restatement (Second) of Agency (1957) focuses on the liability of agents to third persons. Section 343 states the general rule as to an agent or servant's liability to third persons for torts committed:

> An agent who does an act otherwise a tort is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal, except were he is exercising a privilege of the principal, or a privilege held by him for the protection of the principal's interests, or where the principal owes no duty or less than the normal duty of care to the person harmed.

According to the Comments contained in the Restatement, "an agent who assists another agent or the principal to commit a tort is normally himself liable as a joint tort feasor

for the entire damage." *Id.* at § 343, Comment (d). Furthermore, Section 359C(1) of the Restatement (Second) of Agency states that "principal and agent can be joined in one action for a wrong resulting from the tortious conduct of the agent . . . and a judgment can be rendered against each." "Individuals . . . have always been liable for torts committed in the workplace, including indemnification of their employer where the plaintiff proceeds directly against the employer under the theory of respondeat superior." *Bishop* at 424.

■■ Applying agency law to hostile environment sexual harassment, this Court must conclude that supervisors who fall within the Title VII definition of "employer" and have sexually harassed an employee may be held individually liable for the sexual harassment. As a result, this Court cannot, as a matter of law, relieve Shlossman from liability for the harassment which he himself was alleged to have committed as CEO of the company. Defendant Shlossman concedes that as CEO of Jersey Printing he was "in total charge of the company" and "had the authority to control the work situation of which plaintiff complains". Reply Brief p. 9. Clearly, Shlossman falls within the Title VII definition of "employer" for liability purposes. Furthermore, if Domm's allegations prove true, then Shlossman was personally responsible for the harassment which produced a hostile environment for Domm. Therefore, summary judgment as to defendant Shlossman is denied.

It is also inappropriate to grant Golden's motion for summary judgment. Golden was Domm's supervisor and received the reports of sexual harassment. It is unclear from the facts alleged whether Golden had the authority to make employment decisions which would effect the terms or conditions of Domm's employment. However, the facts alleged by Domm imply that Golden perpetuated the harassment through his action or inaction by blaming Domm, the alleged victim, for being the cause of the harassment. In that way, Golden participated personally in the alleged sexual harassment. Thus, a

---

3. "Bouton sought to have BMW held liable rather than the harasser." *Bouton* at 106. This

language implies that the harasser can be held liable.

material issue of fact exists regarding Golden's liability as the agent of his employer pursuant to Title VII.

### Hostile Environment

 "Under both Title VII and NJLAD, a hostile environment claim requires proof of pervasive or severe intentional discrimination that affected the plaintiff and would also affect a reasonable person." *Meritor,* 477 U.S. at 67, 106 S.Ct. at 2405–06; *Bouton* at 106; *Lehmann,* 132 N.J. at 603–4, 626 A.2d 445.[4]

For purposes of this summary judgment motion, defendants concede that plaintiff's allegations are true and argue that a reasonable jury could not find that a hostile environment existed base on the alleged facts.

As a matter of law, this Court cannot determine whether the conduct alleged was pervasive or severe enough to be actionable; this determination is inherently for a jury to decide. If a jury finds plaintiff's testimony to be more credible than defendants' then a hostile environment could be found based on the incidents alleged. Therefore, this Court cannot grant defendants summary judgment motion on this basis.

### Punitive Damages

In order to recover punitive damages, the plaintiff must prove that the defendant's conduct was wantonly reckless or malicious. *Grossman v. Club Med Sales, Inc.,* 273 N.J.Super. 42, 53, 640 A.2d 1194 (App. Div.1994). The question of whether defendants' conduct was wantonly reckless or malicious is one for the finder of fact; however, there must be a legal foundation in the record to support a punitive damage award. *Weiss v. Parker Hannifan Corp.,* 747 F.Supp. 1118, 1135–36 (D.N.J.1990).

The issue of punitive damages is a fact question which should be decided by a jury. If during trial, plaintiff fails to put forth any evidence establishing a foundation for punitive damages, then counsel shall move for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(a). Thus, defendants

motion for summary judgment on this issue is denied.

### Conclusion

For the foregoing reasons, defendants' summary judgment motion is denied. This Court finds that material issues of fact exist as to defendants Shlossman and Golden's liability under Title VII for the alleged sexual harassment that allegedly created a hostile environment for plaintiff Domm. Furthermore, whether a hostile environment existed presents a fact issue. Finally, defendants' motion to dismiss the claim for punitive damages is denied as premature.

---

**4.** The "pervasive and regular" test set forth in *Andrews v. City of Philadelphia,* 895 F.2d 1469 (3rd Cir.199) is not the prevailing law in this Circuit or in New Jersey. *See, Bouton* at 106; *Lehmann* 132 N.J. at 603–4, 626 A.2d 445.