Judith SCHANZER, Plaintiff,

v.

**RUTGERS UNIVERSITY, Joseph Walker, Professor, Walter Gordon, Provost, Robert Catlin, Dean, and Francis Lawrence, President, Defendants.**

No. 94–5059 (JBS).

United States District Court, D. New Jersey.

July 16, 1996.

Gregg L. Zeff, Frost, Szymanski & Zeff, Mt. Holly, NJ, for plaintiff.

John K. Bennett, John J. Peirano, Jr., Vimal K. Shah, Carpenter, Bennett & Morrissey, Newark, NJ, for defendants.

## OPINION

SIMANDLE, District Judge:

Plaintiff, Judith Schanzer, brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–2, against Rutgers University (hereinafter "Rutgers") and numerous of its employees, including President Francis Lawrence, Provost Walter Gordon, Dean Robert Catlin, and Professor Joseph Walker, alleging that she was unlawfully discriminated against on the basis of her race, sex, and religion while an Assistant Professor in the Department of Theater Arts and Speech at the Camden campus of Rutgers, and in decisions to deny her tenure in 1993 and 1995. Plaintiff also asserts numerous pendent state claims under New Jersey law. Presently before this court is defendants' motion to dismiss several counts of plaintiff's Complaint, brought pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be grant-

ed. This court has jurisdiction pursuant to 28 U.S.C. § 1331, as well as under 28 U.S.C. § 1367.

The principal issues to be decided in this motion to dismiss are whether plaintiff has appropriately exhausted her administrative remedies with regard to the circumstances surrounding the second decision to deny her tenure in 1995, whether Title VII supports individual liability, and whether plaintiff's state law claim for whistleblowing under the *Pierce* doctrine is barred by operation of the New Jersey Law Against Discrimination. Several other subsidiary issues are considered as well.

## I. Background

The facts giving rise to this cause of action stem from plaintiff Judith Schanzer's employment as an Assistant Professor of Theater in the Theater and Speech Department at Rutgers under the direct supervision of the Chairman of that department, defendant Professor Joseph Walker. Plaintiff sets forth, in a detailed Amended Complaint, a series of allegedly discriminatory acts, culminating with the decision by the University to deny her a tenured position.

Plaintiff asserts that while employed by Rutgers, defendants, through Professor Walker "exhibited a pattern and practice of racial discrimination against whites," (Amended Complaint at ¶ 20), as well as a "pattern and practice of religious discrimination and sexual harassment." (*Id.* at ¶ 24). Plaintiff Schanzer is a white, Jewish, female, (*Id.* at ¶ 24(a)), and defendant Walker is a black male. (*Id.* at ¶¶ 19–21).

Plaintiff, in her Amended Complaint, alleges that while under the supervision of defendant Walker, he described her as "a white Jew bitch" and "Jewish American Princess," excluded her from faculty meetings, excluded her from departmental programs, excluded her from choice teaching assignments and theatrical productions, created a climate of discrimination on the basis of his teachings, as well as made inappropriate sexual comments and suggestions. (*Id.* at ¶¶ 24(a)–(g)). Defendant Walker is also alleged, *inter alia,*

to have taught that blacks are superior to all other races, stated his desire to "rid the department of all whites," used racial epithets, and discouraged black students from associating with white students. (*Id.* at ¶¶ 20(a)–(j)). Defendants Gordon and Catlin are alleged to have been aware of these actions and done nothing to abate them. (*Id.* at ¶¶ 25–30).

In addition to the discriminatory climate that defendant Walker is alleged to have fostered in his department, plaintiff also asserts that several of the defendants conspired to deny her a tenured position at the University. (*Id.* at ¶¶ 31–40). Plaintiff alleges that defendants Walker and Catlin held private meetings to discuss plaintiff's application for tenure, and defendant Catlin is alleged to have stated that he would "take the heat for denying plaintiff tenure." (*Id.* at ¶ 35). After approval for tenure by two University committees, plaintiff was allegedly denied tenure by defendant Catlin in April 1993. (*Id.* at ¶¶ 36–37). Essentially, plaintiff asserts that defendant Walker, in conjunction with defendant Catlin, in addition to creating a discriminatory environment, conspired to deny her a tenured position, with the acquiescence of defendant Gordon, Provost of the University.

Following the tenure denial, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC") on August 4, 1993, (Def.Br., ex. I), and was issued a Right to Sue letter on or about July 26, 1994. (*Id.* at ¶ 41). However, subsequent to the tenure denial and filing of the EEOC Charge, and after an appeal of the tenure decision through the University grievance process, the University Grievance Committee determined that the tenure decision was arbitrary and capricious and granted plaintiff a one-year extension to re-apply for tenure. (*Id.* at ¶ 39). Following remand for re-review of the tenure packet, defendant Catlin again recommended against granting plaintiff tenure and defendant President Lawrence, accepting this recommendation, made the final decision to deny plaintiff tenure. (*Id.* at ¶¶ 44, 48).[1]

---

1. Defendants' Brief sets forth in great detail the general process involved in a tenure decision,

The original Complaint commencing this action was filed October 19, 1994, and comprised the allegations of discrimination up to and including the first denial of plaintiff's application for tenure. On December 22, 1995, the Honorable Robert Kugler, U.S.M.J., granted plaintiff's motion for leave to file the aforementioned Amended Complaint, which added, *inter alia,* further allegations of discrimination stemming from the second denial of plaintiff's application for tenure. The new allegations found in the Amended Complaint are premised upon a second EEOC Charge filed October 6, 1995. At the time of the filing of the Amended Complaint, the EEOC had not yet issued a second right to sue letter.

The Amended Complaint contains thirteen counts,[2] and seeks relief for alleged racial, gender, and religious discrimination, on the basis of: (1) Title VII, as amended, 42 U.S.C. § 2000e–2; (2) 42 U.S.C. § 1981; (3) 42 U.S.C. § 1983; (4) 42 U.S.C. §§ 1985 & 1986; (5) the New Jersey Law Against Discrimination (hereinafter "NJLAD"), *N.J.S.A.* § 10:1–1; (6) breach of contract; (7) intentional infliction of emotional distress; (8) civil conspiracy; (9) negligent infliction of emotional distress; (10) defamation; (11) retaliation under the Conscientious Employee Protection Act (hereinafter "CEPA"), *N.J.S.A.* § 34:19–1; (12) retaliation under NJLAD, *N.J.S.A.* § 10:5–12(d); and (13) whistleblowing in violation of public policy. The Complaint seeks an award of tenure, compensatory damages, punitive damages, injunctive relief, attorney's fees, costs, and any other relief as this court deems just.

Defendants' motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), attacks numerous aspects of plaintiff's Amended Complaint, and asserts that: (1) events subsequent to the first tenure denial must be dismissed for failure to exhaust administrative remedies; (2) count one, asserting a claim under Title VII, must be dismissed as to defendants Lawrence, Catlin and Gordon because they were not named in the original EEOC charge; (3) count one must be dismissed as to defendants Lawrence, Catlin and Gordon as Title VII does not support individual liability; (4) count nine, asserting a claim for negligent infliction of emotional distress, must be dismissed because it is barred by the New Jersey Workers' Compensation Act; (5) Counts five through fourteen must be dismissed as a result of the waiver contained in CEPA; (6) count thirteen, alleging whistleblowing, must be dismissed because it alleges matters already protected by NJLAD; (7) counts one through four must be dismissed to the extent they assert claims directly under the Fifth and Fourteenth Amendments; and (8) count two, asserting a claim under 42 U.S.C. § 1981 must be dismissed to the extent it asserts a claim for sex discrimination.

As a result of the filing of the motion described herein, plaintiff recognized several deficiencies in the Amended Complaint and has sought to correct them. Plaintiff has stipulated that she will withdraw counts nine and eleven of the Amended Complaint, asserting claims for common law negligent infliction of emotional distress and on the basis of CEPA, respectively. Plaintiff has also stated that she will not pursue a cause of

---

particularly where multiple appeals are involved. (Def.Br. at 1–13). As this motion was filed as a motion to dismiss for failure to state a claim upon which relief can granted, pursuant to Fed. R.Civ.P. 12(b)(6), the court must accept as true all allegations in plaintiff's Amended Complaint and all reasonable inferences therefrom. The court may also consider, however, documents that are indisputably authentic and appended to the papers of either party. *See In re Donald J. Trump Casino Securities Litigation,* 7 F.3d 357, 368 n. 9 (3d Cir.), *cert. denied,* 510 U.S. 1178, 114 S.Ct. 1219, 127 L.Ed.2d 565 (1993); *Bishop v. Okidata, Inc.,* 864 F.Supp. 416, 424 n. 8 (D.N.J.1994). *See also* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure,* § 1357, at 299 (2d ed. 1990 & Supp.1995) ("In

determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account."). Defendants' detailed description of the tenure and appeals process, however, is generally not relevant to the motion to dismiss pending before the court.

2. As currently captioned, plaintiff's Amended Complaint contains fourteen counts. However, as count fourteen seeks only punitive damages, this court will not address it as a separate avenue for liability.

action for sexual discrimination under 42 U.S.C. § 1981.

Other than the issues rendered moot by plaintiff's concessions, each issue will be addressed *seriatim.*

## II. Discussion

### A. Motion to Dismiss Standard

 A motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted does not attack the merits of the case, but merely tests the legal sufficiency of the Complaint. *See Sturm v. Clark,* 835 F.2d 1009, 1011 (3d Cir.1987). When considering a Rule 12(b)(6) motion, the reviewing court must accept as true all well-pleaded allegations in the Complaint and view them in the light most favorable to the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Wisniewski v. Johns–Manville Corp.,* 759 F.2d 271, 273 (3d Cir. 1985); *Rogin v. Bensalem Township,* 616 F.2d 680, 685 (3d Cir.1980), *cert. denied,* 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981). In considering the motion, a district court must also accept as true any and all reasonable inferences derived from those facts. *See Unger v. National Residents Matching Program,* 928 F.2d 1392, 1400 (3d Cir.1991); *Glenside West Corp. v. Exxon Co., U.S.A.,* 761 F.Supp. 1100, 1107 (D.N.J.1991); *Gutman v. Howard Savings Bank,* 748 F.Supp. 254, 260 (D.N.J.1990). A court may not dismiss the Complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

 The question before the court is not whether the plaintiff will ultimately prevail; rather, it is whether she can prove any set of facts in support of her claims that would entitle her to relief. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984). However, while the rules do not dictate that a "claimant set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 149–50 n. 3, 104 S.Ct. 1723, 1725 n. 3, 80 L.Ed.2d 196 (1984) (quoting *Conley,* 355 U.S. at 47, 78 S.Ct. at 103).

### B. The Merits of Defendants' Motion

1. *Defendants' Argument that Plaintiff Failed to Exhaust Her Administrative Remedies With Regard to the New Allegations Contained in the Amended Complaint*

 It is well-established that while moving through the EEOC administrative process, a potential federal court plaintiff must exhaust all administrative remedies. *Brown v. General Services Administration,* 425 U.S. 820, 832, 96 S.Ct. 1961, 1967, 48 L.Ed.2d 402 (1975) (noting that attached "to the right to file a civil action in a federal district court ... are certain preconditions"). The Third Circuit Court of Appeals has concluded that this requirement plays a gatekeeping function, as "there must be some limitation on suits in the district court so that the Commission will have the first opportunity to examine the allegations of discrimination." *Ostapowicz v. Johnson,* 541 F.2d 394, 398 (3d Cir.1976), *cert. denied,* 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977). This determination is grounded in the belief that the discrimination can be corrected "through administrative conciliation and persuasion." *Id. See also Stewart v. United States Immigration & Naturalization Service,* 762 F.2d 193, 198 (2d Cir.1985) (noting that exhaustion is required "to give the administrative agency the opportunity to investigate, mediate, and take remedial action").

 The exhaustion requirement includes filing timely charges at each administrative step. *See Howze v. Jones & Laughlin Steel Corp.,* 750 F.2d 1208, 1210 (3d Cir. 1984); *Bermingham v. Sony Corp. of America, Inc.,* 820 F.Supp. 834, 847 (D.N.J.1992), *aff'd,* 37 F.3d 1485 (3d Cir.1994). Furthermore, a potential plaintiff is required to first present to the agency those factual allegations subsequently raised in district court. *See Stewart,* 762 F.2d at 197–98 (holding that the District Court lacks jurisdiction to review

those facts not alleged before the agency unless those facts are reasonably related to a charge filed with the agency).

Defendants argue that the Amended Complaint, sets forth allegations that occurred subsequent to the original decision to deny plaintiff tenure.[3] Defendant asserts that these allegations, notably, defendant Catlin's re-examination of plaintiff's tenure application and defendant Lawrence's ultimate determination that plaintiff should not be granted tenure, were not part of the original Charge before the EEOC which generated the July 24, 1994 right to sue letter. These allegedly discriminatory actions, however, are encompassed in a second EEOC charge, filed October 6, 1995. At the time of the briefing of the instant motion, no right to sue letter had been received. Consequently, because no right to sue letter had been received with regard to these allegations, defendants posit that plaintiff has failed to adequately exhaust her administrative remedies with regard to these particular allegations. (Def.Br. at 14–16).

Subsequent to the filing of this motion, however, the EEOC issued plaintiff a right to sue letter, dated May 8, 1996, for the allegations contained in the second Charge. On the basis of this letter, plaintiff now asserts that defendants' failure to exhaust argument has been rendered moot. (Plaintiff's Letter Brief, dated May 14, 1996). In rejoinder, defendants assert that the issuance of this second letter cannot confer jurisdiction over allegations contained therein, as the sequence to which plaintiff has adhered—file a lawsuit, file a Charge of discrimination, receive a right to sue letter—renders meaningless the policies underlying the exhaustion doctrine, discussed above. (Defendants' Letter Brief, dated May 30, 1996, at 5–6).

Although in this case it is unclear as to whether the issuance of the second right to sue letter, encompassing the allegations occurring subsequent to the first tenure denial, can bring those allegations before this court and whether it would indeed undercut the policies underlying the exhaustion doctrine,

the court need not reach this question. In this case, the distinction between the allegations contained in the first and second right to sue letters is essentially a distinction without a difference. Because the individual defendants are dismissed from the Title VII aspect of this case pursuant to the accompanying Order on the basis that Title VII does not support individual liability, *see infra* part II.B.2, the only remaining allegations that defendants challenge found in the second right to sue letter not found in the first right to sue letter are, as is noted above, the events surrounding the second denial of tenure after Dean Catlin's original decision was found to be arbitrary and capricious.

There is a narrow exception to the "factual exhaustion" requirement into which these allegations squarely fit. Factual allegations that were not alleged at the agency level may be properly asserted in the district court if they can be reasonably expected "to grow out of the charge of discrimination." *Ostapowicz,* 541 F.2d at 399. *See also Waiters v. Parsons,* 729 F.2d 233, 237 (3d Cir. 1984) (noting that the relevant test is "whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom"); *Hicks v. ABT Associates, Inc.,* 572 F.2d 960, 966 (3d Cir.1978). In this case, the allegations found in the second EEOC Charge are merely an extension of those found in the first. In the first charge, plaintiff asserted that she was denied tenure on the basis of her race, sex, and religion stemming from defendant Catlin's determination that she lacked sufficient accomplishment in her field of expertise. In the second charge, plaintiff asserted, after remand back to defendant Catlin, that she was again denied tenure for substantially the same, impermissible, reasons. Clearly, the challenged conduct found in the second letter can be considered to "grow out" of the original charge of discrimination, as these allegations are part of the same overall episode of alleged discrimination. We reach this conclusion irrespective of the fact that the sec-

---

**3.** Principally, defendants challenge paragraphs 42 to 52 of the Amended Complaint. Defendants do not challenge the remainder of allegations added in the Amended Complaint, those unrelated to the circumstances surrounding the second tenure denial decision.

ond tenure determination was not made until after the first right to sue letter was issued by the EEOC.

Moreover, at the time this motion is decided, the policies of administrative exhaustion have been satisfied. The second denial of tenure occurred on July 26, 1995. Plaintiff filed her second EEOC Charge on October 6, 1995, challenging this conduct on grounds of religious, gender, and racial discrimination. Presumably, these parties had the opportunity in the second EEOC phase for "conciliation and persuasion" to resolve the second claim. They did not succeed in doing so. The EEOC issued the second right to sue letter on May 8, 1996, and the second claim is ripe. It would be the essence of wasting time and resources to dismiss the allegations herein related to the second denial of tenure, so that plaintiff could file a new Title VII action based thereon, and so that ultimately the new Complaint could be consolidated for trial with the old to put us where we are already.

As such, defendants' motion to dismiss those allegations in the Amended Complaint occurring subsequent to the first denial of tenure as improperly exhausted is hereby denied.

2. *Defendants' Argument that Individuals Cannot be Held Liable Under Title VII*

 In count one of the Amended Complaint, plaintiff seeks to hold defendants Walker, Gordon, Catlin and Lawrence liable in their individual capacities for violations of Title VII. As defendants note in their supplemental letter, dated May 30, 1996, this court has recently considered in related case, and rejected, the notion that Title VII can support individual liability.[4] *See Cardoza v. Merion Cricket Club*, Civ. No. 95–4055 (E.D.Pa. May 2, 1996) (JBS);[5] *Behrens v. Rutgers University*, Civ. No. 94–358, 1996 WL 570989 (D.N.J. March 29, 1996) (JBS).[6]

As this court noted in both *Behrens* and *Cardoza*, the basis for individual liability under Title VII is found in a literal interpretation of the statute. 42 U.S.C. § 2000e–2(a)(1) provides that:

It shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

The statute further defines the term "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees and any agent of such a person." 42 U.S.C. § 2000e(b). The meaning of the phrase "and any agent" is responsible for generating a substantial split of authority among the federal courts.

 Courts in this circuit are divided as to whether individual liability for violations of Title VII may attach, and the Third Circuit Court of Appeals, save for its efforts in *Sheridan v. E.I. duPont de Nemours & Co.*, 74 F.3d 1439 (3d Cir.), *vacated for rehearing en banc*, 74 F.3d 1459 (3d Cir. Feb. 28, 1996),

4. This court must reject plaintiff's argument that the law of the case, premised upon Judge Kugler's Order granting plaintiff leave to file the Amended Complaint, bars litigation of this particular issue. Plaintiff asserts that because defendants argued at that time that leave should have been denied on the basis of futility, as Title VII would not support individual liability, and that Judge Kugler, over this objection, granted plaintiff leave to amend, defendants should now be estopped from re-arguing that Title VII does not support individual liability. Aside from the fact that Judge Kugler expressly permitted the filing of the Amended Complaint without prejudice to the instant challenge to individual liability under Title VII, (*see* Transcript, dated December 22, 1995, at 12), the standard for granting a party leave to amend a pleading is significantly different, and bears little relation to the standard

a party must meet to survive a motion to dismiss. Judge Kugler's determination that the Amendment, adding additional individual defendants, was indeed not futile was made at a time when this court had yet to issue a decision on the question of individual liability under Title VII.

5. The undersigned United States District Judge for the District of New Jersey, sitting by designation in the United States District Court for the Eastern District of Pennsylvania pursuant to an Order entered August 3, 1995 under 28 U.S.C. § 292(b).

6. The decision in *Behrens* involves a substantially similar suit against Rutgers University relating to the conduct of Professor Walker, a suit with which the parties are no doubt familiar.

has yet to remedy this split.[7] Several courts have concluded that "supervisory employees are agents of employers and, as such, may be proper defendants under Title VII." *Duva v. Bridgeport Textron*, 632 F.Supp. 880, 882 (E.D.Pa.1985). *See also Domm v. Jersey Printing Co., Inc.*, 871 F.Supp. 732, 738–39 (D.N.J.1994); *Doe v. William Shapiro, Esq., P.C.*, 852 F.Supp. 1246, 1252–53 (E.D.Pa. 1994). By contrast, however, other courts of this circuit have also concluded that "the reference to agents in the definition of employer is simply to incorporate respondeat superior liability into Title VII." *Caplan v. Fellheimer, Eichen, Braverman & Kaskey*, 882 F.Supp. 1529, 1531 (E.D.Pa.1995). *See also Krupinski v. Circuit City Stores, Inc.*, Civ. No. 94–7536, 1995 WL 401784, at *2 (E.D.Pa. July 5, 1995); *Verde v. City of Philadelphia*, 862 F.Supp. 1329, 1334 (E.D.Pa.1994). This court is persuaded, for reasons discussed herein, that discriminatory actions perpetrated by an employer's agent generates liability for the employer-entity only.[8] *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir.1995); *Grant v. Lone Star Co.*, 21 F.3d 649, 651–53 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994); *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587 (9th Cir.1993), *cert. denied,* 510 U.S. 1109, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994); *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991). Support for this conclusion that we reach here today is grounded in two equally compelling reasons.

As is noted *supra*, the statutory scheme created by Congress, pursuant to 42 U.S.C.

§ 2000e(b), limits liability to those employers with fifteen or more employees. This limitation is grafted into the statute, in part, because "Congress did not want to burden small entities with the costs associated with litigating discrimination claims." *Miller*, 991 F.2d at 587. *See also Tomka*, 66 F.3d at 1314; *Caplan,* 882 F.Supp. at 1531–32. While the relevant legislative history indicates that there were other factors involved in Congressional concern over imposing liability on smaller business entities,[9] a substantial concern was articulated with regard to the onus that would be placed those businesses "forced to comply with federal regulations and defend against Title VII suits." *Tomka,* 66 F.3d at 1314. *See also* 110 Cong. Rec.S. 13092 (Remarks of Senator Cotton); 110 Cong.Rec.S. 13088 (Remarks of Senator Humphrey); 110 Cong.Rec.S. 13092–93 (Remarks of Senator Morse). It would therefore be inimical to the intent of Congress in protecting smaller entities from potentially large damage awards to then allow liability to attach against individuals—parties, theoretically, with a lesser ability to afford the costs associated with discrimination litigation and statutory compliance. *See Miller,* 991 F.2d at 587 ("If Congress decided to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees."). At the same time, this court gives meaning to the phrase "and any agent" in 42 U.S.C. § 2000e(b), *supra,* by recognizing that the acts of any such employee will be attributed to the employer for purposes of Title VII liability under ordinary agency principles, such as when the miscon-

---

7. In *Sheridan v. E.I. duPont de Nemours and Co.,* 74 F.3d 1439, 1443 (3d Cir.), *vacated for rehearing en banc,* 74 F.3d 1459 (3d Cir. Feb. 28, 1996), the Third Circuit affirmed the district court's dismissal of Title VII claims against an individual. After laying out the split among the courts of appeal and the district courts of this circuit, the court merely stated that "[w]hile reasonable arguments in favor of the contrary position can be made ... we follow the great weight of authority from other courts of appeal and hold that an employee cannot be sued." *Sheridan,* 74 F.3d at 1454. The Third Circuit, however, also granted rehearing en banc and vacated its Opinion on February 28, 1996. Although *Sheridan* is certainly not binding upon this court, we believe, for the reasons articulated in the text and on the basis of the summary manner in which the Third

Circuit affirmed on this issue, that the Third Circuit will again conclude that an individual cannot be held liable under Title VII.

8. The court is cognizant, however, that Title VII is a remedial statute, and, as such, should be interpreted liberally. In this instance, this presumption cannot outweigh the substantial nature of the arguments militating against individual liability.

9. These factors include the protection of intimate relations existing in small businesses, effects on competition and the economy, and the constitutionality of Title VII under the Commerce Clause. *See Tomka,* 66 F.3d at 1314.

duct arises in the scope of the employee's employment or agency, whether or not specifically authorized or ratified by the employer.

Furthermore, the remedial provisions available to plaintiffs pursuant to the Civil Rights Act of 1991, 42 U.S.C. § 1981a, counsel against the imposition of individual liability. *See Tomka,* 66 F.3d at 1314–24; *Miller,* 991 F.2d at 587–88 n. 2. Pursuant to the Civil Rights Act of 1991, Congress authorized awards of compensatory and punitive damages for victims of intentional discrimination. 42 U.S.C. § 1981a. Prior to that enactment, remedies for a successful plaintiff were limited to the equitable remedies of backpay and reinstatement, 42 U.S.C. § 2000e–5(g)(1), which can typically be affected only by an employer. In authorizing an award of damages, "Congress calibrated the maximum allowable damage award to the size of the employer and failed to repeal the exemption for defendants with less than fifteen employees." *Tomka,* 66 F.3d at 1315. *See also* 42 U.S.C. § 1981a(b)(3). The statute creates a sliding scale of maximum damages, ranging from a cap on damages at $50,000.00 for those employers with fewer than 101 employees, to a cap of $300,000.00 for those employers with more than 500 employees. *See* 42 U.S.C. §§ 1981a(b)(3)(A) & (D). Nowhere in this scheme, however, are individuals assigned a range of potential liability for damages. The Ninth Circuit in *Miller* concluded that this omission was intentional, as had Congress "envisioned individual liability under Title VII for compensatory and punitive damages, it would have included *individuals* in this litany of limitations." 991 F.2d at 587–88 n. 2 (emphasis in original).

Although § 1981a can be construed to mean that each tier in the sliding scale applies not only to the entity within the specified range of employees, but also to all agents of such entity, *see Bishop v. Okidata, Inc.,* 864 F.Supp. 416, 424 n. 7 (D.N.J.1994), this assertion leads to results that could not have been intended by Congress when calibrating the size of a damage award to the size of the entity and must be rejected. If this were the case, mere fortuity would determine what level of damages an individual would be responsible for, wholly unrelated and independent of that individual's ability to pay. *See Tomka,* 66 F.3d at 1316 ("It is doubtful that such an anomalous result was contemplated by a Congress that failed even to address individual liability.").[10]

Plaintiff directs this court to *Bouton v. BMW of North America, Inc.,* 29 F.3d 103, 106 (3d Cir.1993), whereby the Third Circuit stated that the plaintiff in that matter, Bouton, "sought to have BMW held liable *rather than the harasser.*" (emphasis added). *See also Domm,* 871 F.Supp. at 736–38. The implication of the court in *Bouton,* that the individual could be held liable, is not dispositive of the issue presently before this court. There is no indication that the issue was given anything more than passing consideration by the panel in *Bouton,* as it was prefatory in nature and merely utilized to introduce the court's discussion of the standard to be used when determining respondeat superior employer liability under Title VII. Additionally, given the split of authority on the instant issue, as well as the substantial debate that has been engendered in numerous Courts of Appeal on this matter, this court concludes that it would be inappropriate to base its holding on divining the meaning of the prefatory remarks of the court in *Bouton.*

Finally, the fact that Title VII did not create a damages remedy against individual supervisors does not mean that a Title VII plaintiff lacks an effective remedy. Certainly any injunctive relief against the employer would be enforceable alike against the employer's officers, directors, management, employees, and others acting in concert with the employer, a concept embedded in the federal rule governing injunctions and their effect, Fed.R.Civ.P. 65(d). The non-availability of a Title VII damages remedy against an individual is thus consistent with the remedial pur-

---

**10.** The Second Circuit illustrated the problem with linking individual liability to employer size by noting that "an agent for an employer with 110 employees would be potentially liable for damages of $100,000.00; if the agent's employer had 100 employees, however, the agent would be liable for $50,000.00." *Tomka,* 66 F.3d at 1316.

poses of the Act, and injunctive relief against the employer would apply to all employees.

Thus, this court concludes that an employer's agent may not be held individually liable under Title VII.[11] Accordingly, count one of plaintiff's Complaint must be dismissed as a matter of law with regard to defendants Joseph Walker, Walter Gordon, Robert Catlin, and Francis Lawrence.[12]

### 3. *Defendants' Argument that Plaintiff's Claim for Whistleblowing is Barred by the NJLAD*

■ Defendants next argue plaintiff's claim for whistleblowing, which is alleged to be "contrary to a clear mandate of public policy," (Complaint at ¶ 101), is barred by the New Jersey Law Against Discrimination.

**11.** Because of the result we reach here, we need not consider defendant's argument that count one must be dismissed as to the individual defendants because they were not named in the EEOC charge.

**12.** A number of courts which have concluded that agents may not be liable in their "individual" capacity have nevertheless concluded that such persons may be maintained as a party-defendant in their "official" capacity. *See Verde*, 862 F.Supp. at 1332; *Timmons v. Lutheran Children and Family Service of Eastern Pa.*, No. 93–4201, 1993 WL 533399, at *5 (E.D.Pa. Dec. 17, 1995). While precluding individual liability on the part of the agent, this dichotomy serves, in effect, to maintain the suit against that party for purposes of discovery. *See Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1241 n. 2 (2d Cir.1995). *See also Bishop*, 864 F.Supp. at 422 (citing *Sauers v. Salt Lake County*, 1 F.3d 1122, 1125) (10th Cir.1993) ("A suit against a supervisory employee in her official capacity is a suit against the individual in name only; it operates in all respects as a suit against the employer."). This court, however, finds no basis for this distinction between "official" and "individual" suits in the statutory language of Title VII. *See William Shapiro, Esq., P.C.*, 852 F.Supp. at 1252–53; *Bishop*, 864 F.Supp. at 423. In *William Shapiro, Esq., P.C.*, the district court concluded that the official/individual was a "false dichotomy" grafted from cases arising under 42 U.S.C. § 1983. 852 F.Supp. at 1252. Section 1983 governs the relationship between state officials and individuals, and therefore requires that the defendant act under the color of state law in order that liability attach. Title VII, by contrast, supports no such distinction, and "the relevant threshold question is not whether the defendant acted in an official capacity, but whether the defendant is the plaintiff's employer under the statute." *Id.* at 1253. If the defendant is not plaintiff's employer, as in

Defendants posit that plaintiff is asserting a claim premised upon *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58 (1980), and that the New Jersey Supreme Court has concluded, in dicta, that where a remedy already exists under NJLAD, a statutory creation, it is unnecessary to resort to a common-law *Pierce* cause of action. (Def.Br. at 27–28).[13] Plaintiff has not provided a response to this contention.

The New Jersey Supreme Court, in addressing this issue, has stated that where the NJLAD provides an appropriate remedy, "it might be unnecessary to recognize or create a *Pierce* -type action to vindicate substantially the same rights and provide similar relief." *Shaner v. Horizon Bankcorp.*, 116 N.J. 433, 454, 561 A.2d 1130 (1989). *See also*

the instant case, it is irrelevant whether that person was acting in an official or individual capacity, for a Title VII suit may not be properly maintained against the individual.

**13.** The New Jersey Supreme Court has determined that, under certain circumstances, "an employee has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy." *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 72, 417 A.2d 505. *See also Versarge v. Township of Clinton, New Jersey*, 984 F.2d 1359, 1371 (3d Cir.1993); *Butler v. Sherman, Silverstein & Kohl*, 755 F.Supp. 1259, 1263–64 (D.N.J.1990). The standard is necessarily a stringent one, and requires this court to:

> balance the interests of the employee, the employer, and the public. Employees have an interest in knowing they will not be discharged for exercising their legal rights. Employers have an interest in knowing they can run their businesses as they see fit as long as their conduct is consistent with public policy. The public has an interest in employment stability and in discouraging frivolous lawsuits by dissatisfied employees.

*Pierce*, 84 N.J. at 71, 417 A.2d 505. This narrow exception to the at-will employment doctrine provides a cause of action in either contract or tort, but the employee must "point to a clear expression of public policy" in order to survive summary judgment. *Pierce*, 84 N.J. at 73, 417 A.2d 505. *See also Borecki v. Eastern International Management Corp.*, 694 F.Supp. 47, 57 (D.N.J.1988). In predicting whether a particular policy is sufficiently established to be considered a "clear mandate," the Court in *Pierce* instructed that courts examine "legislation, administrative rule, regulation or decision, and judicial decisions." 84 N.J. at 72, 417 A.2d 505.

*Erickson v. Marsh & McLennan Co.*, 117 N.J. 539, 562, 569 A.2d 793 (1990) (same); *Drinkwater v. Union Carbide Corp.*, 904 F.2d 853, 864 n. 22 (3d Cir.1990) (noting that, on the basis of *Shaner* and *Erickson*, the New Jersey Supreme Court has "le[ft] some doubt as to whether plaintiff's wrongful discharge claim is preempted by the NJLAD"). It is clear that the NJLAD provides the full panoply of rights and remedies that are available under the common law and that would be available in case brought pursuant to *Pierce*. *See N.J.S.A.* § 10:5–13 ("All remedies available in common law tort actions shall be available to prevailing plaintiffs [under NJLAD].").

As it appears that the New Jersey Supreme Court would decline to extend a *Pierce* remedy to victims of employment discrimination on the basis that these individuals are similarly and adequately protected by the NJLAD, this court will decline to do so as well. AT least one other court in this district has reached this identical conclusion. *See Wallick v. AT & T Communications, Inc.*, Civ. No. 87–1007, 1991 WL 635610, at *10–11 (D.N.J. July 23, 1991).

Accordingly, count thirteen of plaintiff's Amended Complaint, asserting a claim for violation of public policy, is hereby dismissed.[14]

### III. Conclusion

Based upon the foregoing, this court will deny defendants' motion to dismiss those allegations in the Amended Complaint occurring subsequent to the first denial of plaintiff's application for tenure as improperly exhausted. This court will, however, grant defendants' motion to dismiss count one, premised upon Title VII, with regard to defendants Lawrence, Gordon, Catlin, and Walker, as Title VII does not support individual liability. This court will also grant defendants' motion to dismiss count thirteen, seeking a remedy under the *Pierce* doctrine, as the NJLAD provides an appropriate remedy for an alleged discriminatory dismissal under New Jersey law. In addition, those portions of counts one through four premised directly upon the Fifth and Fourteenth Amendments are also dismissed pursuant to defendants' motion.

Likewise, counsel for plaintiff has agreed to withdraw counts nine and eleven of the Amended Complaint, asserting claims for common law negligent infliction of emotional distress and on the basis of CEPA, respectively. Plaintiff has also stated that she will withdraw her cause of action for sexual discrimination premised upon 42 U.S.C. § 1981.

The accompanying Order is entered.

### ORDER

This matter having been brought before the court upon the motion of defendants Rutgers University, Joseph Walker, Walter Gordon, Robert Catlin, and Francis Lawrence to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6); and the court having considered the submissions of the parties; and for the reasons stated in the Opinion of today's date;

It is this 15th day of July, 1996 hereby

---

**14.** Likewise, those portions of counts one through four which are premised directly upon the Fifth and Fourteenth Amendments must be dismissed as well. The Fifth Amendment governs the conduct of the federal government and federal employees, and does not regulate the activities of state officials or state actors. *See Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959); *Shoemaker v. City of Lock Haven*, 906 F.Supp. 230, 238 (M.D.Pa.1995) (noting that the Fifth Amendment "does not apply to the acts or conduct of the States, their agencies, subdivisions, or employees"); *Harrington v. Lauer*, 888 F.Supp. 616, 619 (D.N.J.1995) ("The Fifth Amendment is a limitation on the federal government and does not apply to state actions."); *Huffaker v. Bucks County District Attorney's Office*, 758 F.Supp. 287, 290 (E.D.Pa.1991).

As plaintiff is not arguing that Rutgers, the State University of New Jersey, is indeed a federal entity for purposes of the Fifth Amendment, plaintiff's argument that she may assert a Fifth Amendment claim through the Fourteenth Amendment must be rejected. In addition, plaintiff may not bring a claim directly under the Fourteenth Amendment where a claim is asserted under section 1983. *See Williams v. Bennett*, 689 F.2d 1370, 1390 (11th Cir.1982), *cert. denied*, 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983); *Turpin v. Mailet*, 591 F.2d 426, 427 (2d Cir.1979); *Taylor v. State of Rhode Island*, 726 F.Supp. 895, 901 (D.R.I.1989) ("the circuits have consistently dismissed constitutional claims when the complaint also asserts § 1983 claims"). As such, this court will dismiss all claims brought directly under the Fourteenth Amendment as well.

ORDERED that count nine of the Amended Complaint, asserting a claim for negligent infliction of emotional distress be, and hereby is *DISMISSED*, with consent of the plaintiff; and it is

FURTHER ORDERED that count eleven of the Amended Complaint, asserting a claim under the Conscientious Employee Protection Act, *N.J.S.A.* § 34:19–1 be, and hereby is *DISMISSED*, with the consent of the plaintiff; and it is

FURTHER ORDERED that plaintiff's claim for sexual discrimination pursuant to 42 U.S.C. § 1981 be, and hereby is *DISMISSED*, with consent of the plaintiff; and it is

FURTHER ORDERED that defendants' motion to dismiss count one, pursuant to Fed.R.Civ.P. 12(b)(6), as to defendants Lawrence, Catlin, and Walker be, and hereby is *GRANTED*, as Title VII does not support individual liability; and it is

FURTHER ORDERED that defendants' motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), those allegations in the Amended Complaint occurring subsequent to the first denial of tenure as improperly exhausted be, and hereby is *DENIED*; and it is

FURTHER ORDERED that defendants' motion to dismiss count thirteen, pursuant to Fed.R.Civ.P. 12(b)(6), be, and hereby is *GRANTED*; and it is

FURTHER ORDERED that defendants' motion to dismiss those portions of counts one through four which are premised directly upon the Fifth and Fourteenth Amendments, pursuant to Fed.R.Civ.P. 12(b)(6) be, and hereby is *GRANTED*.